[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13704
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-23580-JLK

BOZORGMEHR POUYEH,

Plaintiff-Appellant,

versus

BASCOM PALMER EYE INSTITUTE,
PUBLIC HEALTH TRUST OF JACKSON HEALTH SYSTEM,
PUBLIC HEALTH TRUST,
DR. STEVEN J. GEDDE,
DR. JAMES T. BANTA, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 28, 2015)

Before WILSON, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

Bozorgmehr Pouyeh pro se appeals the district judge's dismissal with prejudice of his Third Amended Complaint, alleging claims of discrimination in education and employment based on his national origin and alienage. We affirm.

## I.    BACKGROUND

A.    Complaint Allegations

Bascom Palmer Eye Institute ("Bascom Palmer"), which is a part of the University of Miami ("the University"), houses an ophthalmology residency program at its facility. Each year, seven physicians are offered positions as residents in the ophthalmology residency program. All seven positions are filled through the Association of University Professors Ophthalmology Matching Program. "Graduates of recognized medical schools" are eligible to enter the residency program. R. at 289. A Basic Affiliation Agreement ("BAA") between the University of Miami and the Public Health Trust of Jackson Health System ("the Trust") sets forth how the residency programs under the Trust's auspices are conducted, including the ophthalmology residency program at Bascom Palmer. The BAA provides that residents are not students of the University, but rather are full-time employees.

Pouyeh is from Iran; he attended medical school there.  In 2010, 2011, and 2012, he applied for a position as an ophthalmology resident at Bascom Palmer. Pouyeh alleged he had the following qualifications for the position: (1) scoring in the 99th and 96th percentiles on unspecified tests, (2) having recommendation letters, (3) having two years of research and clinical experience in ophthalmology, (4) giving presentations and publishing papers in ophthalmology, (5) being an author and reviewer for the American Academy of Ophthalmology Journal, (6) writing a book chapter about a topic in ophthalmology, and (7) being a top student in medical school in Iran.  During this period, Pouyeh also was a volunteer-research fellow at Bascom Palmer.  He was not selected for a residency position for any of the years he applied.

After Pouyeh was not selected for a 2011 residency position, he filed a complaint on January 23, 2012, with the Equal Employment Opportunity Commission ("EEOC") and alleged discrimination.  In his EEOC complaint, Pouyeh alleged he had applied for the residency program in 2011 and was not selected because of his national origin.  He stated specifically that program director, Dr. Stephen Gedde, and other faculty members had told him Bascom Palmer does not "hire doctors for residency in eye surgery who are graduates from a medical school outside of the United States."  R. at 284.  In July or August 2012, Pouyeh's volunteer-research position was terminated.  On December 6, 2012,

Pouyeh went to Bascom Palmer to attend a weekly continuing-medical-education conference open to doctors and other healthcare professionals. While Pouyeh was using the restroom at Bascom Palmer, security guards threw him on the floor and detained him there until the police arrived and arrested him for trespassing.

Pouyeh's Third Amended Complaint contained nine counts of discrimination and named as defendants Bascom Palmer; the Trust; Dr. Gedde and the members of the Residency Selection Committee (Dr. James Banta, Dr. Craig McKeown, Dr. Richard Lee, Dr. Wendy Lee, Dr. Audina Berrocal) (collectively, "the individual defendants"); Bascom Palmer Chairman Dr. Eduardo C. Alfonso, and Trust Associate Dean of Graduate Medical Education, Dr. Richard Parish. Counts 1 through 4 were against Bascom Palmer and the Trust. Counts 1 through 3 concerned Pouyeh's allegation his application for a position as a resident was denied. In each of the counts, he alleged specifically (1) he had applied for the position; (2) he was not interviewed; (3) he was treated differently than American interviewees; (4) Bascom Palmer and the Trust knew of his national origin or alienage; (5) other immigrant Iranian doctors also were excluded from interviews; and (6) his national origin or alienage was a motivating factor in declining to interview him.

In Count 1, Pouyeh alleged Bascom Palmer and the Trust engaged in education-based discrimination, in violation of Title VI, 42 U.S.C. § 2000d, by

4

denying his application for a residency position.  Additionally, Pouyeh alleged he was deprived of the ability to participate in the weekly continuing-medical-education conference, because of his national origin.  In Count 2, Pouyeh alleged Bascom Palmer and the Trust engaged in employment discrimination, in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10 by denying his application to the residency program. In Count 3, Pouyeh alleged Bascom Palmer and the Trust engaged in employment discrimination for failing to hire him, in violation of 42 U.S.C. § 1981.  In Count 4, Pouyeh alleged Bascom Palmer and the Trust retaliated against him and violated Title VII and the FCRA, by (1) terminating his volunteer-research position after he filed his EEOC complaint, (2) failing to hire him for a 2012 resident position, and (3) having him arrested for trespassing.  In Count 5, Pouyeh named Bascom Palmer, the Trust, and Dr. Gedde as defendants; he alleged 42 U.S.C. § 1981 retaliation on the same basis as Count 4.

Count 6 named as defendants Bascom Palmer, the Trust, and the individual defendants.  Pouyeh alleged the defendants engaged in FCRA discrimination by preventing him from obtaining a medical license.  In Count 7, Pouyeh alleged Dr. Gedde and the other individual defendants deprived him of his due process right to employment, education, and to obtain a medical license, in violation of 42 U.S.C. § 1983.  In Count 8, Pouyeh alleged the individual defendants conspired to

5

interfere with his constitutional rights, in violation of 42 U.S.C. § 1985, on a similar basis.  In Count 9, Pouyeh alleged Dr. Eduardo, Dr. Parish, and the members of the Residency Selection Committee negligently failed to prevent the conspiracy from depriving him of his civil rights, in violation of 42 U.S.C. § 1986.

B.    Dismissal of  Proposed Amended Complaint

Bascom Palmer, the Trust, and the individual defendants all filed motions to dismiss Pouyeh's Third Amended Complaint.  Thereafter, Pouyeh filed a motion to amend his complaint further and to join additional defendants.  He attached to his motion a proposed Fourth Amended Complaint.  A magistrate judge issued a Report and Recommendation ("R&R"), recommending some of Pouyeh's claims be dismissed.  The magistrate judge recommended granting Bascom Palmer's motion to dismiss Counts 1 through 6, because (1) the University, not Bascom Palmer, was the proper defendant; and (2) under the BAA, the University did not assert sufficient control over the residency program to be Pouyeh's prospective employer.

The magistrate judge then addressed the Trust's motion to dismiss.  At the outset, she explained, although Pouyeh purported to raise a claim of Title VI education discrimination in Count 1, it was more correctly construed as a claim of employment discrimination, because residents were employees, not students, under the BAA.  The magistrate judge recommended Count 1 be dismissed with

6

prejudice for failure to allege the Trust received federal funding for the primary purpose of employment. She recommended the Trust's motion be denied regarding the Title VII and FCRA claims in Counts 2, 4, and 6. She further recommended the Trust's motion be granted concerning the § 1981 claims in Counts 3 and 5.

The magistrate judge also recommended the individual defendants' motion to dismiss be granted with respect to the § 1981 and FCRA claims in Counts 5 and 6. She explained the claim of FCRA discrimination in obtaining a medical license in Count 6 was not cognizable against individuals. She recommended the individual defendants' motion be denied with respect to the §§ 1983, 1985, and 1986 claims in Counts 7 through 9. The magistrate judge further recommended Pouyeh's request to file his proposed Fourth Amended Complaint be denied, because it failed to comport with federal and local rules of procedure, but he should be given one final opportunity to file an amended complaint.

Over Pouyeh's objections, the district judge adopted the R&R in part, dismissed his Third Amended Complaint with prejudice but denied him leave to file another amended complaint. The judge determined the Third Amended Complaint failed to state a claim against Bascom Palmer, because Bascom Palmer was not Pouyeh's prospective employer under the BAA. The judge adopted the recommendation of the R&R that Count 1 be dismissed with prejudice regarding

the Trust, and Counts 5 and 6 be dismissed with prejudice regarding the individual defendants.  Concerning the remaining claims, the judge determined Pouyeh's Third Amended Complaint failed to provide sufficient facts to state a plausible claim for discrimination.

## II.    DISCUSSION

A.    <u>Incorporation of Arguments</u>

As an initial matter, in several places in Pouyeh's initial and reply briefs, he purports to incorporate arguments raised in other documents.  For example, he purports to incorporate portions of his Third Amended Complaint and arguments made in a motion he filed in this Court to have the standard for deciding motions to dismiss set forth in *Iqbal*[1] and *Twombly*[2] declared unconstitutional.  In his reply brief, he purports to incorporate all arguments he plans to present in his opening and reply briefs in a different appeal pending before this court.

"[A]lthough we are to give liberal construction to the pleadings of *pro se* litigants, we nevertheless have required them to conform to procedural rules." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (internal quotation marks omitted).  "Moreover, we do not address arguments raised for the first time in a *pro se* litigant's reply brief."  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

---

[1]  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2008).

[2]  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2006).

We have explained that an appellant may not incorporate by reference arguments made elsewhere, including before the district judge, because "[m]ere citation to documents [filed in district court] does not meet the[] requirements" set forth in the Rules of Appellate Procedure. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004).

Pouyeh's purported adoption of the briefs from his other appeal is insufficient, because he cannot raise an issue for the first time in a reply brief. *See Timson*, 518 F.3d at 874. We will not consider any argument raised in his other appeal that also is not raised in his initial brief in this appeal. *See id.* His purported incorporation by reference of his pleadings in district court similarly fails to comply with the Rules of Appellate Procedure. *See Albra*, 490 F.3d at 829; *Four Seasons Hotels & Resorts, B.V.*, 377 F.3d at 1167 n.4. Finally, his purported adoption of his motion to have *Iqbal* and *Twombly* deemed unconstitutional is ineffective, because a panel of this court has already denied that motion.

B.   Abandoned Issues

We first determine Pouyeh has abandoned any argument the district judge erred in dismissing Counts 4, 5, 6 (against the Trust and Bascom Palmer), 7, 8, and 9 from his Third Amended Complaint. He also has abandoned any argument the district judge erred in denying his motion to amend. An issue not briefed on appeal by a pro se litigant is deemed abandoned, and its merits will not be

9

addressed.  *Timson*, 518 F.3d at 874; *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).  "[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

Although Pouyeh provides argument concerning the dismissal of his discrimination claims under Title VII, the FCRA, § 1981, and the dismissal of his § 1981 retaliation claim, he does not discuss the Title VII and FCRA retaliation he alleged in Count 4.  *See Timson*, 518 F.3d at 874.  In his initial brief, Pouyeh does not discuss his §§ 1983, 1985, and 1986 claims in Counts 7, 8, and 9.  *See Timson*, 518 F.3d at 874.  In his reply brief, Pouyeh argues Bascom Palmer's alleged policy of excluding graduates of foreign medical schools violates his equal protection rights and § 1983; that argument, however, is insufficient to raise the issue on appeal, because a litigant may not raise an issue on appeal for the first time in a reply brief.  *See Timson*, 518 F.3d at 874.  While Pouyeh provides some argument related to Count 6, the FCRA claim related to his inability to obtain a medical license, his argument is limited to the improper dismissal of the claim against the individual defendants.  Therefore, he has abandoned any argument the district judge erred in dismissing Count 6 against the Trust and Bascom Palmer.  *See Timson*, 518 F.3d at 874; *Access Now, Inc.*, 385 F.3d at 1330.

Similarly, Pouyeh provides no meaningful argument the district judge erred in dismissing his § 1981 retaliation claim in Count 5. *See Timson*, 518 F.3d at 874; *Access Now, Inc.*, 385 F.3d at 1330. Pouyeh raises several arguments in his initial brief related to the magistrate judge's reasoning for recommending Count 5 be dismissed, but those arguments are unavailing, because the district judge (1) declined to adopt that portion of the R&R, and (2) dismissed the Third Amended Complaint, since the complaint was too conclusory to survive a motion to dismiss, not for the reasons given in the R&R.

Finally, Pouyeh provides no argument related to the denial of his motion to amend in his initial brief or reply brief; therefore, he has abandoned the issue. *See Timson*, 518 F.3d at 874; *Access Now, Inc.*, 385 F.3d at 1330. Although he makes passing references to his motion to amend and his proposed Fourth Amended Complaint, those references are insufficient to raise the issue. *See Sapuppo*, 739 F.3d at 681.

C.    Constitutionality of *Iqbal* and *Twombly*

On appeal, Pouyeh argues the standard for determining Federal Rule Civil Procedure 12(b)(6) motions to dismiss set forth by the Supreme Court in *Iqbal* and *Twombly* is unconstitutional. The Supreme Court has not overturned either of those decisions; they remain controlling law. *See Jaffree v. Wallace*, 705 F.2d 1526, 1532 (11th Cir. 1983) ("Federal district courts and circuit

11

courts are bound to adhere to the controlling decisions of the United States Supreme Court."). Pouyeh's constitutional challenge to *Iqbal* and *Twombly* is meritless.

## D.    Title VI Discrimination, Count 1

Pouyeh argues the district judge misconstrued his Title VI claim as one alleging employment discrimination, rather than education discrimination. He argues ophthalmology-resident positions are dual employment and education positions; consequently, they are open to a Title VI education-discrimination challenge. Because his claim was one of education discrimination, Pouyeh argues his allegation in his Third Amended Complaint that Bascom Palmer received federal financial assistance was sufficient to sue the Trust, because the two entities collaborated in running the ophthalmology-residency program. He also maintains his trespassing arrest was an act of retaliation for his having sued Bascom Palmer for discrimination, which allegedly supports a claim of Title VI retaliation.

We review de novo a district judge's grant of a motion to dismiss under Rule 12(b)(6). *Redland Co., Inc. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009). "[W]e may affirm the dismissal of a complaint on any ground supported by the record even if that ground was not considered by the district court . . . ." *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1242 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 947 (2015). We will not consider an issue that was

12

not raised before the district judge and is raised on appeal for the first time. *Access Now, Inc.*, 385 F.3d at 1331.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (internal quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). Similarly, a complaint must contain more than "naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (internal quotation marks omitted). The plaintiff must plead sufficient facts to allow the district judge to draw a reasonable inference that the defendant is liable for the misconduct. *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In ruling on a motion to dismiss, a judge must accept as true all of the allegations contained in a complaint but need not accept legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere

13

conclusory statements, do not suffice." *Id.* Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678, 129 S. Ct. at 1949-50 (internal quotation marks omitted). In the Rule 12(b) motion-to-dismiss context, a judge generally may not consider materials outside of the four corners of a complaint without first converting the motion to dismiss into a motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005). A court may consider a document that has been attached to a motion to dismiss, however, if it is central to the plaintiff's claims and its authenticity is not challenged. *Id.* at 1276.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Pouyeh consistently has maintained his Title VI claim is one of education, not employment discrimination. Consequently, we do not consider the merits of the district judge's dismissal of any Title VI employment claim. We also note we may consider the BAA, even though it was not attached to the complaint. *See Day*, 400 F.3d at 1275-76. Although attached to Bascom Palmer's motion to dismiss, the operative BAA was central to Pouyeh's claims against Bascom Palmer, and Pouyeh referenced the BAA specifically in his complaint. *See id.* Moreover, Pouyeh has

14

not disputed the authenticity of the BAA. *See id.* at 1276. Based on the denial of his residency application, Pouyeh's claim of Title VI education discrimination is flawed, because the BAA makes clear medical residents are employees, not students. Therefore, Pouyeh has failed to show that, as a prospective medical resident, he was excluded from, denied participation in, or denied the benefits of an educational, rather than employment, program or activity. *See* 42 U.S.C. § 2000d.

Pouyeh's allegation that he suffered education discrimination because he was barred from attending the weekly medical conference also falls short of stating a plausible claim for relief. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. His Third Amended Complaint contained a claim he was barred access to a weekly morning-medical conference at Bascom Palmer at the time he was arrested for trespassing. His claim falls short, because Pouyeh's allegation his exclusion was motivated by his national origin is wholly conclusory. *See id.* Pouyeh simply asserted he was arrested for trespassing because of his national origin, but that amounts to "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). Because he failed to allege sufficient facts to show plausibly his arrest for trespassing was improperly motivated by his national origin, his Title VI claim in Count 1 properly was dismissed. *See id.*

Pouyeh did not include a Title VI retaliation claim argument in his Third Amended Complaint; consequently, he may not raise it on appeal. *See Access*

15

*Now, Inc.*, 385 F.3d at 1331.  Pouyeh states he included this claim in his proposed Fourth Amended Complaint, but that has no effect, because (1) he was not given leave to file his proposed Fourth Amended Complaint, and (2) he has abandoned any argument the district judge erred in denying him leave to file it.  *See id.* at 1330.  Therefore, Pouyeh's attempt to raise a Title VI retaliation claim is unavailing.

E.    Alleged Employment Discrimination, Counts 2 and 3

Pouyeh argues he proved a prima facie case of discrimination based on his national origin, because (1) all seven slots during the three years he applied were filled by "Americans"; (2) Pouyeh had prior ophthalmology, clinical, and other valuable experiences the other applicants did not have; and (3) consequently, it reasonably could be assumed he was more qualified than those who were given residency positions.  Pouyeh also states Bascom Palmer's alleged policy of not hiring graduates of foreign medical schools disproportionately affects foreign-born-medical students.

Title VII, the FCRA, and § 1981 all prohibit an employer from engaging in discrimination on the basis of an individual's national origin.  *See* 42 U.S.C. §§ 1981, 2000e-2(a); Fla. Stat. § 760.10(1)(a).  We have explained claims brought under § 1981 and the FCRA need not be analyzed separately from Title VII claims, based on the same conduct.  *See Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232

16

F.3d 836, 843 n.11 (11th Cir. 2000) ("The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context."); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the [FCRA], because the Florida act was patterned after Title VII.").

Under Title VII, an employer may not "fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, an employer may not "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." *Id.* § 2000e-2(a)(2). Title VII provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2(m). There are two types of actionable discrimination under Title VII: disparate treatment and disparate impact. *Spivey v. Beverly Enters., Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999). "Although proof of discriminatory intent is necessary for a plaintiff to succeed on a claim of disparate

17

treatment, a claim of disparate impact does not require evidence of intentional discrimination." *Id.*

A potential employee may prove a prospective employer discriminated against him through direct or circumstantial evidence. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). "Direct evidence of discrimination is evidence, that, if believed, proves the existence of a fact in issue without inference or presumption." *Id.* (internal quotation marks and alterations omitted). With circumstantial evidence, a plaintiff may prove his case via the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Id.* Where a plaintiff seeks to prove his claims with circumstantial evidence, "[i]n a traditional failure-to-hire case," he establishes a prima facie case of disparate treatment by showing that: "(1) [he] was a member of a protected class; (2) [he] applied and was qualified for a position for which the employer was accepting applications; (3) despite [his] qualifications, [he] was not hired; and (4) the position remained open or was filled by another person outside of [his] protected class." *Id.* at 1273. "Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case, it must provide enough factual matter (taken as true) to suggest intentional . . . discrimination." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (citation and internal quotation marks omitted).

18

A plaintiff may prove a prima facie case of disparate impact discrimination by the following two-step process: "First the plaintiff must identify the specific employment practice that allegedly has a disproportionate impact.  Second, the plaintiff must demonstrate causation by offering statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination." *Spivey*, 196 F.3d at 1314 (citation omitted).

We do not analyze Pouyeh's Title VII, FCRA, and § 1981 claims in Counts 2 and 3 separately, because the two counts allege the same intentional discrimination based on the same facts.  *See Rice-Lamar*, 232 F.3d at 843 n.11; *Harper*, 139 F.3d at 1387.  The district judge properly dismissed Pouyeh's discrimination claims, since Pouyeh did not provide sufficient factual matter to suggest discrimination.  *See Davis*, 516 F.3d at 974.  First, Pouyeh failed to state a plausible claim of disparate treatment discrimination.  He pled two of the four requirements to establish a prima facie case of discrimination: (1) he was a member of a protected class, based on his national origin, and (2) the residency position was filled by someone outside of his protected class.  *See Joe's Stone Crabs, Inc.*, 296 F.3d at 1273.  Nevertheless, Pouyeh failed to provide sufficient factual matter to show he was qualified for the position.  *See id.*  He alleged in conclusory fashion he was qualified; he stated he had graduated from medical school in Iran and had clinical and research experience, but he did not allege the

19

specific qualifications necessary for resident physicians at Bascom Palmer or that he had fulfilled them.  Pouyeh's allegation he was qualified for the position amounts to a threadbare recital of an element of his Title VII claim, which the district judge was not obligated to accept as true.  *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

Pouyeh alleges Bascom Palmer had a policy of not accepting graduates of foreign medical schools.  This allegation cuts against Pouyeh's allegations of discrimination, because it suggests one of the necessary qualifications to be a resident physician at Bascom Palmer is graduating from an American medical school.  Moreover, the most plausible explanation for Pouyeh's application being rejected is the foreign medical school from which he graduated was not among the recognized medical schools.  On the facts alleged in Pouyeh's complaint, his allegation of discrimination based on national origin amounted to no more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (internal quotation marks omitted).

Construed liberally, Pouyeh's complaint also sought to raise a disparate impact claim, based on Bascom Palmer's alleged policy of not hiring graduates of foreign medical schools.[3]  Nevertheless, Pouyeh did not allege any facts in his

---

[3] Pouyeh states on appeal he did not raise a disparate impact claim, because the alleged discrimination was intentional.  Nevertheless, we construe his Third Amended Complaint to raise

20

complaint, such as statistics, sufficient to show the practice of not hiring graduates of foreign medical schools has resulted in prohibited discrimination. *See Spivey*, 196 F.3d at 1314. Instead, he stated he knew of only one other immigrant Iranian doctor, who had applied and not obtained a residency position; however, he did not provide any information about that individual's background. Even if accepted as true, that fact is insufficient to show the alleged practice of not hiring graduates of foreign medical institutions resulted in prohibited discrimination, since it gives no insight into statistical information. *See Spivey*, 196 F.3d at 1314. Pouyeh makes some conclusory assertions regarding statistical disparities in his reply brief, but those assertions are unavailing, because they are speculative and were not argued in his initial brief on appeal. *See Timson*, 518 F.3d at 874. Therefore, Pouyeh's Third Amended Complaint did not state a plausible disparate impact claim.

F.    FCRA Discrimination in Obtaining a Medical License, Count 6

Pouyeh argues the district judge improperly reasoned the individual defendants could not be sued under the FCRA. Under the FCRA:

> Whenever, in order to engage in a profession, occupation, or trade, it is required that a person receive a license, certification, or other credential, become a member or an associate of any club, association, or other organization,

---

such a claim, because (1) it referenced Bascom Palmer's alleged policy of excluding graduates of foreign medical schools, and (2) on appeal, he argues that policy had a disproportionate effect on foreign-born, medical-school graduates. *See Spivey*, 196 F.3d at 1314 (explaining the requirements of disparate impact claims).

21

> or pass any examination, it is an unlawful employment practice for any person to discriminate against any other person seeking such license, certification, or other credential, seeking to become a member or associate of such club, association, or other organization, or seeking to take or pass such examination, because of such other person's race, color, religion, sex, national origin, age, handicap, or marital status.

Fla. Stat. § 760.10(5).

Even if Pouyeh is correct that he can raise a claim against the individual defendants under § 760.10(5), the record provides ample support for the dismissal. *See Seminole Tribe of Fla.*, 750 F.3d at 1242 (recognizing we may affirm for any reason supported by the record). Pouyeh's claim in Count 6 was based on the same conduct as his discrimination claims in Counts 2 and 3, the denial of his application for a residency position. As we have explained, his discrimination allegations were too conclusory to survive dismissal. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

## III.   CONCLUSION

Pouyeh has failed to show the standards for deciding motions to dismiss set forth in *Iqbal* and *Twombly* are unconstitutional. Under those standards, the district judge properly dismissed Counts 1, 2, 3, and 6 against the individual defendants, because those counts do not state a plausible claim for relief. Pouyeh

has abandoned any argument the district judge erred in dismissing Counts 4, 5, 6

against the Trust and Bascom Palmer, and Counts 7, 8, and 9.[4]

**AFFIRMED.**

---

[4] Because we have affirmed the district judge's dismissal of Counts 1, 2, 3, and 6 against the individual defendants on the basis that Pouyeh's claims were too conclusory to state plausible claims for relief, we do not address the alternative arguments raised by Bascom Palmer: (1) it was a fictitious entity that could not be sued; and (2) even if it could be sued, it was not sued properly, because it was not Pouyeh's actual or prospective employer. For the same reason, we do not address Pouyeh's argument Bascom Palmer was the Trust's agent for purposes of the residency program.