[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12966
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cv-04198-KOB


BOZORGMEHR POUYEH,

Plaintiff-Appellant,

versus

UAB DEPARTMENT OF OPHTHALMOLOGY, et al.,

Defendants,

THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA,
Board Members,
Robert J. Bentley,
In individual capacity and as a member of the Board of Trustees,
Thomas R. Bice,
In individual capacity and as a member of the Board of Trustees,
Paul W. Bryant Jr.,
In individual capacity and as a member of the Board of Trustees,
Karen P. Brooks,
In individual capacity and as a member of the Board of Trustees, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 2, 2015)

Before ED CARNES, Chief Judge, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Bozorgmehr Pouyeh, proceeding pro se, appeals the district court's dismissal with prejudice of his fourth amended complaint. Pouyeh filed suit after he applied for and did not receive a position in the residency program of the University of Alabama at Birmingham (UAB) School of Ophthalmology. His fourth amended complaint alleged that he was denied a resident position because he was an Iranian citizen, and that the Board of Trustees of the University of Alabama System, the Board's members, UAB, and various UAB employees had violated his federal statutory and constitutional rights. The district court granted the defendants' motion to dismiss the complaint for failure to state a claim, doing so with prejudice. See Fed. R. Civ. P. 12(b)(6). We review that dismissal de novo. Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).[1]

_____

[1] In his brief to this Court, Pouyeh raises several issues that were not presented to the district court in this case, but were raised in a separate discrimination suit that Pouyeh filed against the University of Miami for denying him admission to its ophthalmology residency program. See Pouyeh v. Bascom Palmer Eye Inst., No. 14-13704, 2015 WL 3406538, at *3–4 (11th Cir. May 28, 2015) (unpublished) (addressing Pouyeh's claim that the Rule 12(b)(6) standard, established

Count One asserts that the Board is liable under Title VII because it "has excluded systematically Iranian doctors from [residency] position[s]" by requiring them to have graduated from a medical school accredited by either the American Medical Association (AMA) or the Canadian Medical Association (CMA). Construed liberally, Count One asserts three claims for relief:  (1) a disparate-treatment claim, (2) a disparate-impact claim, and (3) a pattern-or-practice claim.

To make out a disparate-treatment claim, Pouyeh's complaint must contain factual allegations demonstrating, either directly or circumstantially, that the Board's actions were based on his national origin.  See Raj v. La. State Univ., 714 F.3d 322, 331 (5th Cir. 2013); cf. EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002) (explaining that, at summary judgment, a disparate-treatment claim must be supported by direct or circumstantial evidence of discrimination). Here, the complaint does not "contain sufficient factual matter" to plausibly suggest that the Board intentionally excluded Pouyeh and other applicants based on their national origin.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  The most plausible explanation — indeed, the one provided in the

by the Supreme Court's decisions in Ashcroft v. Iqbal and Bell Atlantic Corp. v. Twombly, is unconstitutional).  We will not address those issues because they were not presented to the district court in this case.  See Harris Corp. v. Nat'l Iranian Radio & Television, 691 F.2d 1344, 1353 (11th Cir. 1982) ("Generally, an appellate court will not consider issues not raised in the district court."); see also Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A., 377 F.3d 1164, 1167 (11th Cir. 2004) (rejecting the practice of incorporating by reference the arguments that a party made in a brief that it filed outside of the appeal before the court).

3

complaint itself — is that Pouyeh was disqualified from consideration because he did not graduate from an AMA- or CMA-accredited medical school.[2] Rejecting applicants based on whether the medical schools they attended were accredited by the AMA or the CMA is not discrimination based on national origin. See Maceluch v. Wysong, 680 F.2d 1062, 1065 (5th Cir. 1982) (explaining that a policy "based upon the locality of the education received" does not discriminate based on alienage because "[s]ubstantial numbers of Americans attend medical schools abroad, just as some foreigners attend medical schools in the United States"). Pouyeh's complaint therefore has not alleged facts that establish a plausible Title VII disparate-treatment claim. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (quotation marks omitted).

To make out a disparate-impact claim, Pouyeh must allege facts establishing that the Board's admission policy has a "significant adverse effect[]" on a protected group. Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807–08 (11th Cir. 2010) (quotation marks omitted). That requires factual allegations — usually a statistical disparity — demonstrating a disparity in treatment between

---

[2] Because the fourth amended complaint asserts that this is the policy governing admission to UAB's School of Ophthalmology, we must assume that it is. See Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005) ("On a motion to dismiss for failure to state a claim, we accept as true the facts as alleged in the complaint.").

groups so significant that it supports an inference that discrimination is the cause.

See id.; Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1314–15 (11th Cir.

1994).  Pouyeh's complaint contains no such factual allegations, only the bare

assertion that the Board has "excluded systematically Iranian doctors" and that one

of Pouyeh's friends from Iran was also denied a residency position at UAB's

School of Ophthalmology.  That is not enough.

And as for the pattern-or-practice claim, such claims may be brought under

Title VII by the government or by a class of private plaintiffs under Federal Rule

of Civil Procedure 23(b)(2).  Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d

955, 964–65 (11th Cir. 2008); Joe's Stone Crab, 220 F.3d at 1286.  Pouyeh is not

the government, and he has not brought a class action under Rule 23(b)(2).  He has

therefore failed to state a claim for relief under a pattern-or-practice theory.

Count Two asserts that the Board is liable under 42 U.S.C. § 1981 for

discrimination against Pouyeh based on "his alienage/National Origin."  This claim

is barred by the Eleventh Amendment, which prevents federal courts from hearing

a § 1981 claim "in which the state or one or more of its agencies is . . . the

defendant," Brown v. E. Cent. Health Dist., 752 F.2d 615, 617 (11th Cir. 1985).

The Board is a state agency.  See Harden v. Adams, 760 F.2d 1158, 1163–64 (11th

Cir. 1985) (holding that Alabama's state university boards are state agencies for

5

purposes of the Eleventh Amendment).  So Pouyeh has not stated a claim for relief under § 1981.

Count Three alleges that UAB and the Board violated Title VI because they "excluded systematically Iranian doctors from ophthalmology residency and internship positions."  Title VI provides that:  "No person in the United States shall, on the ground of . . . national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[3]  42 U.S.C. § 2000d.  A defendant is not liable under Title VI unless the defendant's actions constitute a violation of the Fourteenth Amendment's Equal Protection Clause.  See I.L. v. Alabama, 739 F.3d 1273, 1288 n.10 (11th Cir. 2014).  As we have already explained, rejecting an applicant based on whether his medical school was accredited by the AMA or the CMA is not discrimination based on the applicant's national origin.  See Maceluch, 680 F.2d at 1065–67.  UAB's requirement that applicants attend an AMA- or CMA-certified medical school is therefore subject only to rational basis review, and it satisfies the rational-basis test.  Cf. id. (holding that a State's refusal to grant "the 'M.D.' designation" to individuals with a "Doctor of Osteopathy" degree is

---

[3] In his brief to this Court, Pouyeh also asserts that he has a claim to relief under 42 U.S.C. § 2000d-3.  He did not raise this theory of liability in the district court, so we will not consider it here.  Fils v. City of Aventura, 647 F.3d 1272, 1284 (11th Cir. 2011) ("To prevail on a particular theory of liability, a party must present that argument to the district court.").

subject to, and satisfies, the rational-basis test).  Pouyeh has failed to state a claim for relief under Title VI.

The remaining four counts of Pouyeh's complaint assert the same two theories of liability against the individual members of the Board and three UAB employees.  Those counts allege that the individual defendants:  (1) deprived Pouyeh "of equal benefit of laws" under Title VI and Title VII; and (2) violated his "constitutionally substantive due process right to employment, education, obtaining license to continue his profession in the United States, appropriate socioeconomic status, property, and marriage."  Pouyeh has failed to state a claim based on the first theory because there is no individual liability under Title VI or Title VII.  Shotz v. City of Plantation, 344 F.3d 1161, 1171 (11th Cir. 2003) ("It is beyond question . . . that individuals are not liable under Title VI."); Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.").

Pouyeh has failed to state a claim against the individual defendants under his second theory because he has not identified a constitutional right that was actually violated.  Except for marriage, there is no substantive due process right to any of the items that Pouyeh claims as constitutional rights.  See Pollard v. Cockrell, 578

7

F.2d 1002, 1011 (5th Cir. 1978)[4] (rejecting the notion that there is a substantive due process "right to engage in a lawful business, trade, or profession"); Mahavongsanan v. Hall, 529 F.2d 448, 450 (5th Cir. 1976) (rejecting a substantive due process right to higher education).  And the complaint does not provide any explanation for how denying Pouyeh a residency position infringed on his constitutionally protected right to marry.  Cf. Zablocki v. Redhail, 434 U.S. 374, 386, 98 S. Ct. 673, 681 (1978) (rejecting the notion "that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny" and declaring that "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed").

   **AFFIRMED.**

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.