[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13903
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-23582-JEM

DR. BOZORGMEHR POUYEH,

Plaintiff-Appellant,

versus

PUBLIC HEALTH TRUST OF JACKSON HEALTH SYSTEM,
a.k.a. the "Trust",
CARLOS A. MIGOYA,
Chief Executive Officer of the Trust,
DR. STEVEN J. GEDDE,
Program Director of Ophthalmology Residency
Program,
DR. STEFANIE R. BROWN,
Program Director of Preliminary & Internal
Medicine, formerly known as Dr. Doe,
DR. J. DONALD TEMPLE,
Program Director of Harrington Program,
DR. DOE,
Former Program Director of Preliminary and
Internal Medicine,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 22, 2020)

Before ROSENBAUM, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

This is the third case that Dr. Bozorgmehr Pouyeh, an Iranian national who received his medical degree in 2004 in Iran, has filed alleging that he has been discriminated against when applying to medical residency positions after he immigrated to the United States.[1]  According to Pouyeh, he must complete a residency in the United States in order to practice medicine here.  But he believes that the defendants—the individuals and entities that oversee the residency programs to which he applied—have not accepted him for any residency program because, despite his superior qualifications and experience, the programs arbitrarily and illegally discriminate against international medical-school graduates ("IMGs") and illegally discriminate based on national origin and alienage.

In a *pro se* second amended complaint, Pouyeh alleged violations of Title VII, the Florida Civil Rights Act ("Act"), 42 U.S.C. § 1981, and equal-protection and

_____

[1] Pouyeh states that he became a legal permanent resident of the United States in 2007 and was naturalized as a citizen in 2014.

2

substantive-due-process principles under 42 U.S.C. § 1983. The district court dismissed the complaint in part as barred by *res judicata* and in part for failure to state a viable claim to relief. Pouyeh now appeals, arguing that *res judicata* does not apply, that he stated viable claims, and that the district court failed to address most of his claims. After careful review, we affirm in part and vacate and remand in part.

## I.  Background

Because they are relevant to the current case, we take a moment to describe Pouyeh's prior two cases before turning to his current claims and the district court's decision in this case.

### A.  Pouyeh's Prior Cases

Pouyeh first filed a lawsuit in October 2012 after he applied for but did not receive a position in the ophthalmology residency program at the Bascom Palmer Eye Institute ("Bascom Palmer"), which is part of the University of Miami and which operates under the Public Health Trust of Jackson Health System (the "Trust"). The operative third amended complaint alleged that he applied for a position in the program in each of the years 2010, 2011, and 2012, but all slots were filled by graduates of U.S. medical schools ("USMGs"). Pouyeh was told by the program director that the program did not accept IMGs.

Pouyeh brought claims for (a) education-based discrimination in violation of Title VI, 42 U.S.C. § 2000d; (b) employment discrimination, in violation of Title VII, 42 U.S.C. § 2000e-2, the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10, and 42 U.S.C. § 1981; (c) retaliation in violation of Title VII, the FCRA, and 42 U.S.C. § 1981; (d) deprivation of his due-process right to employment, education, and to obtain a medical license, in violation of 42 U.S.C. § 1983; (e) conspiracy to interfere with his constitutional rights in violation of 42 U.S.C. § 1985; and (f) negligent failure to prevent a conspiracy from depriving him of his civil rights in violation of 42 U.S.C. § 1986.

The district court dismissed Pouyeh's complaint with prejudice, and we affirmed that judgment on appeal. *Pouyeh v. Bascom Palmer Eye Inst. (Pouyeh I)*, 613 F. App'x 802 (11th Cir. 2015). We concluded that Pouyeh had abandoned some of his claims on appeal and that his other claims failed on the merits. In relevant part, we stated that discrimination against IMGs alone did not qualify as discrimination based on national origin, and that his allegations were otherwise too conclusory to show discrimination based on national origin. *See id.* at 807–12. We declined to address Pouyeh's equal-protection arguments because they were raised for the first time on appeal. *Id.* at 807, 811.

In December 2012, two months after he filed his first complaint, Pouyeh filed another lawsuit raising similar allegations against the University of Alabama at

Birmingham School of Ophthalmology.  In a fourth amended complaint, he alleged that he applied for but was denied a residency position at the School of Ophthalmology in each of the years 2010, 2011, and 2012, because he did not graduate from an AMA- or CMA-accredited medical school.  He brought claims of national-origin discrimination under Title VI, Title VII, and § 1981, and he alleged violations of his due-process rights to employment, education, and to obtain a medical license under 42 U.S.C. § 1983.

Again, the district court dismissed the complaint with prejudice, and we affirmed that judgment on appeal.  *Pouyeh v. UAB Dep't of Ophthalmology (Pouyeh II)*, 625 F. App'x 495 (11th Cir. 2015).  We found that Pouyeh's claims of national-origin discrimination failed because "[r]ejecting applicants based on whether the medical schools they attended were accredited by the AMA or the CMA is not discrimination based on national origin," and because his allegations were otherwise insufficient to show discrimination based on national origin.  *Id.* at 497–98.  As for Pouyeh's equal-protection claims, we concluded that a policy that discriminates against applicants based on the accreditation of their medical school was "subject only to rational basis review, and it satisfies the rational-basis test."  *Id.* at 498.  Finally, we found that Pouyeh did not have a substantive-due-process right to employment, to education, and to obtain a medical license.  *Id.* at 499.

B.  *Pouyeh's Current Case*

5

In August 2016, Pouyeh filed the current action, relying in part on allegations from his first lawsuit and presenting a more comprehensive challenge to the Trust's residency programs.  He alleged that he applied for but did not receive a position in the Trust's internal-medicine and ophthalmology residency programs or its preliminary medicine-internship program in each of the years 2010, 2011, 2012, 2013, 2014, and 2015.  He argued that the Trust irrationally discriminated against IMGs like himself and treated certain IMGs worse than others based on national origin, and that, but for this discrimination, he would have been hired due to his superior qualifications, which he alleged in detail.  He named as defendants the Trust, the CEO and president of the Trust, and the directors of the programs at issue.

The operative second amended complaint contained the following claims.  Counts I, II, and III alleged that the Trust's internal-medicine and preliminary medicine programs use hiring quotas for certain IMGs and rely on applicants' "race/ethnicity, national origin, and citizenship status" in violation of Title VII, the FCRA, § 1981, and equal-protection and substantive-due-process principles under § 1983.  As support for these claims, he alleged that the Trust required applicants to list their race, ethnicity, place of birth, native language, and citizenship status on their applications.  Pouyeh also pointed to the Trust's Harrington Program, which is an internal-medicine residency program that admits IMG physicians from Latin American or Caribbean countries so that these physicians will return to their home

countries and serve those communities. Finally, he asserted that the internal-medicine program had a quota of hiring "at least one Latino from Puerto Rico and at least one Arab," and that, between 2013 and 2015, "Arabs constituted 11.3% (5 out of 44) IMGs" while "only 6.8% of the IMGs were from the rest of the world."

Counts IV–VIII alleged that the Trust's programs unlawfully impose more stringent requirements on IMG applicants. In Counts IV, VI, and VII, Pouyeh alleged that the Trust violated his equal-protection rights by applying different admission standards to IMGs than it does to USMGs or U.S. senior medical students ("US Seniors"). In particular, he contends that the Trust required IMG applicants to the internal-medicine and preliminary medicine programs to (a) have higher scores on "Step 1" exams; (b) take "Step 2" exams before being admitted to a residency program; (c) pass Step 2 exams on the first attempt; and (d) apply within five years of graduation. Counts V and Count VIII alleged that some of these requirements were a pretext for national-origin discrimination—because USMGs and US Seniors are predominately born in the United States and IMGs are predominately born elsewhere—in violation of Title VII and the FCRA.

Counts IX and X concerned the Bascom Palmer ophthalmology residency program. Pouyeh alleged this program had a policy of rarely if ever admitting IMGs. In Pouyeh's view, this policy was both arbitrary, in violation of his equal-protection

and substantive-due-process rights (Count IX), and a pretext for national-origin discrimination, in violation of Title VII and FCRA (Count X).

Finally, Count XI alleged that the Trust violated equal-protection principles by irrationally "set[ting] aside at least 7 positions" in the preliminary medicine program for "applicants who pursue neurology, while they exclude IMGs if they want to pursue ophthalmology instead of neurology."

## C. The District Court's Decision

The defendants filed a motion to dismiss, arguing that dismissal was warranted on three grounds: (a) Pouyeh failed to timely perfect service of process; (b) *res judicata* barred him from relitigating his claims; and (c) the second amended complaint was a "shotgun pleading" that did not comply with Rule 8 of the Federal Rules of Civil Procedure. Pouyeh filed a response opposing each argument.

In a report and recommendation ("R&R"), a magistrate judge recommended that the district court grant the motion to dismiss, but mostly not for the grounds raised in that motion. The magistrate judge began by describing this action as arising from the "decision to not admit him to [the Trust's] ophthalmology residency program at the Bascom Palmer Eye Institute for the years 2010–2015," and then succinctly described each of Pouyeh's eleven claims and the facts which were intended to support those claims. The magistrate judge also reviewed the procedural history of this case and Pouyeh's prior cases.

Turning to the grounds for dismissal raised by the defendants, the magistrate judge concluded that (a) Pouyeh timely served the complaint; (b) Pouyeh's claims relating to the years 2010–2012 were barred by *res judicata* in light of his first lawsuit against Bascom Palmer, but his claims based on the years 2013–2015 were not so barred; and (c) the second amended complaint was "arguably" a shotgun pleading that did not comply with Rule 8(a)(2).

Nevertheless, the magistrate judge, acknowledging Pouyeh's *pro se* status, chose to "liberally construe the second amended complaint" to determine "whether *any* of the factual allegations . . . support Pouyeh's different causes of action." According to the magistrate judge, Pouyeh's "allegations of discrimination boil down to one complaint—[the Trust] supposedly has a policy of not admitting IMGs to its Bascom Palmer residency program and Pouyeh is being denied acceptance to the program for this reason." Citing our decisions in *Pouyeh I* and *Pouyeh II*, the magistrate judge concluded that this policy did not amount to prohibited discrimination and that rational-basis review was satisfied.

The magistrate judge addressed Pouyeh's remaining claims in a footnote. With regard to Pouyeh's allegations of more stringent requirements for IMGs (Counts IV–VIII), the magistrate judge stated that these allegations were not specific to the Trust's residency programs or his applications thereto, and so were "irrelevant to his discrimination claims." With regard to Pouyeh's claims of unlawful quotas in

9

the internal-medicine and preliminary medicine programs, the magistrate judge stated that Pouyeh did not allege "any facts showing that he is qualified" for these programs, and that "he also later states that [the Trust] actually admits many other applicants who attended medical school in Iran to those residency programs, which contradicts his claim that [the Trust] is excluding Iranian-born applicants based on their national origin."

Accordingly, the magistrate judge concluded that Pouyeh had failed to state a plausible claim to relief. The magistrate judge further recommended that dismissal of the complaint be with prejudice because the complaint still suffered from some procedural defects that the court had identified in Pouyeh's prior complaints and because his claims had "a fatal flaw that he cannot overcome – medical schools may deny admission to students who are not graduates from AMA or CMA schools."

Pouyeh filed objections, arguing among other things that the magistrate judge addressed only one group of claims in his complaint—related to the exclusion of IMGs from the Bascom Palmer ophthalmology residency program—and ignored his remaining claims. Pouyeh also objected to the magistrate judge's conclusions regarding whether *res judicata* barred some of his claims and whether the second amended complaint was a shotgun pleading.

In a two-page order, the district court adopted the R&R over Pouyeh's objections, which the court described as "conclusory and repetitive." The court

stated that Pouyeh's claims hinged on the "same essential argument" that was rejected in both *Pouyeh I and Pouyeh II*, namely, "that a medical residency program's policy of rejecting graduates of international medical schools . . . constitutes discrimination based on national origin."  Therefore, the court stated, "[i]nasmuch as the wrongdoing alleged by Pouyeh is not barred by *res judicata*, the dispositive legal question implicated by those allegations has already been addressed and resolved adversely to Pouyeh."  Pouyeh now appeals.

## II.  Standards of Review

We review a dismissal for failure to state a claim *de novo*, accepting the complaint's factual allegations as true and construing them in the light most favorable to the plaintiff.  *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).  Likewise, we review *de novo* a district court's application of the doctrine of *res judicata*. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). "We review a dismissal on Rule 8 shotgun pleading grounds for an abuse of discretion."  *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018). We may affirm on any ground supported by the record, "regardless of the grounds addressed, adopted or rejected by the district court," *Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1316 (11th Cir. 2017), although we ordinarily prefer district courts to address issues in the first instance, *see Wilkerson v. Grinnell*

11

*Corp.*, 270 F.3d 1314, 1322 n.4 (11th Cir. 2001) ("We do not reach these issues today, preferring that the district court address them in the first instance.").

We liberally construe the filings of *pro se* litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotation marks omitted).

## III. Discussion

Pouyeh challenges the district court's decision on a number of grounds. He contends that that his second amended complaint was not a shotgun pleading, that *res judicata* does not apply, and that the court failed to address many of his claims and erred in dismissing the claims it did address. We take each argument in turn.

### A. Shotgun Pleading

Rule 8(a)(2), Fed. R. Civ. P., requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the "statement" is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (cleaned up). We have recognized that this rule aims to enable the responding party to identify the pleader's claim, frame a responsive pleading, and to permit the court to determine

12

which facts are intended to support which claims. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

Here, we decline to affirm the dismissal of Pouyeh's second amended complaint on the ground that it is a shotgun pleading. To begin with, it's not clear that the district court exercised its discretion to dismiss the complaint on that basis. Although the court described the complaint as a shotgun pleading, neither the magistrate judge nor the court clearly stated that dismissal was warranted on that ground. Rather, both the magistrate judge and the court concluded that dismissal was warranted primarily due to deficiencies in the merits of Pouyeh's claims.

Nor can we say that dismissal clearly was warranted on shotgun-pleading grounds. Although Pouyeh's second amended complaint displays some of the characteristics of what we have described as shotgun pleadings, *id.* at 1321–23 (identifying characteristics of "four rough types or categories of shotgun pleadings"), we do not think the complaint, when liberally construed, fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," *id.* at 1323 ("The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."). In fact, the magistrate judge was able to succinctly describe each of Pouyeh's claims and the

13

factual allegations that were intended to support each claim.  And the defendants in their motion to dismiss did not assert an inability to understand Pouyeh's claims.

For these reasons, we decline to affirm the dismissal of the second amended complaint on the ground that it is an impermissible shotgun pleading.

*B.*  Res Judicata

Next, we consider *res judicata*.  The district court dismissed Pouyeh's claims relating to the years 2010–2012 (but not the years 2013–2015) as barred by *res judicata* in light of his previous litigation concerning the Bascom Palmer ophthalmology residency program.

The doctrine of *res judicata* "bars the filing of claims which were raised or could have been raised in an earlier proceeding."  *Ragsdale*, 193 F.3d at 1238.  A claim will be barred by prior litigation if these four elements are met:  "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases."  *Id.*  "As for the fourth element, two cases are generally considered to involve the same cause of action if the latter case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as the former one."  *Maldonado v. U.S. Att'y Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011) (quotation marks omitted).

Pouyeh's claims relating to the ophthalmology residency program (Counts IX

14

and X) for the years 2010–2012 are barred by *res judicata*. Pouyeh challenges only the fourth element, contending that the legal theories in this case are different from the legal theories he pursued in his previous case against Bascom Palmer, and that some crucial evidence was not available until 2014. But *res judicata* bars "all legal theories and claims arising out of the same operative nucleus of fact," whether or not those theories and claims were raised in the previous litigation. *Id.* (quotation marks omitted). Because these claims arise out of the same factual predicate as the previous litigation—Pouyeh's non-admission to the ophthalmology residency program for the years 2010–2012—*res judicata* applies even though Pouyeh is pursuing different legal theories and offering new evidence. *See id.*

Pouyeh is correct, however, that his claims arising from his non-admission to the internal-medicine residency and preliminary medicine internship programs during the years 2010–2012, which were not the subject of previous litigation, do not arise out of the same operative nuclear of facts. *See id.* So *res judicata* does not bar these distinct claims.

## C. The Merits

Turning to the merits of the case, Pouyeh contends that the district court and magistrate judge simply ignored most of his claims in their analyses. He strives to clarify the specific claims he raised below and why his factual allegations support those claims.

We agree that the district court appears to have overlooked certain claims, and we vacate and remand for the court to address them in the first instance. We affirm the dismissal of the remainder of Pouyeh's claims.

To avoid dismissal for failure to state a claim, the complaint "must include enough facts to state a claim to relief that is plausible on its face." *Hunt*, 814 F.3d at 1221 (quotation marks omitted). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quotation marks omitted). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.").

In dismissing Pouyeh's second amended complaint, the district court and magistrate judge "boil[ed] down" his claims to the allegation that Bascom Palmer had a policy of excluding IMGs from its ophthalmology residency program. Pouyeh alleged that this policy was a proxy for discrimination based on national origin, in violation of Title VII, and lacked a rational basis, in violation of his equal-protection

16

and substantive-due-process rights.

As the district court and magistrate judge explained, we rejected these same basic arguments in *Pouyeh I* and *Pouyeh II*.  In *Pouyeh I*, we held that Bascom Palmer's alleged policy of excluding IMGs did not amount to discrimination based on national origin.  *Pouyeh I*, 613 F. App'x at 810–11.  Then, in *Pouyeh II*, we held that a similar policy that "[r]eject[ed] applicants based on whether the medical schools they attended were accredited by the AMA or the CMA" did not amount to "discrimination based on national origin" and also satisfied rational-basis review. *Pouyeh II*, 625 F. App'x at 498; *Maceluch v. Wysong*, 680 F.2d 1062, 1065 (5th Cir.1982) (explaining that a policy "based upon the locality of the education received" does not discriminate based on alienage because "[s]ubstantial numbers of Americans attend medical schools abroad, just as some foreigners attend medical schools in the United States").  And despite Pouyeh's complaints, we are not persuaded that *Pouyeh I* and *Pouyeh II* were wrongly decided or that his allegations in this case warrant a different result.  Accordingly, we affirm the dismissal of Pouyeh's claims under Counts IX and X.

But as Pouyeh stresses at great length on appeal, his claims extended beyond the Bascom Palmer ophthalmology residency program.  In Counts IV–VIII, Pouyeh challenges separate requirements in other residency programs which make it more

difficult for IMGs to be admitted to these programs.[2]  These requirements were not at issue in either *Pouyeh I* or *Pouyeh II*.  In addition, in Counts I–III, Pouyeh alleges, among other things, that twelve first-year positions in the Trust's internal-medicine residency program, approximately one-third of the total positions, are dedicated each year to applicants from the Harrington Program, which is limited to applicants from countries in Latin America and the Caribbean.  Thus, Pouyeh claims that the internal-medical residency program distinguishes between IMGs—favoring some and disfavoring others—on the basis of national origin, and that his applications to this program were not considered on an equal footing with applications from members of the favored national origin groups.  Finally, Count XI challenges another alleged quota in the preliminary medicine internship program.

Neither the magistrate judge nor the district court meaningfully addressed Pouyeh's claims as to matters beyond Bascom Palmer.  The magistrate judge stated that Counts IV–VIII were not specific to the Trust and so were "irrelevant," but a liberal construction of the second amended complaint shows that Pouyeh alleged that the requirements at issue were Trust policies, not policies generally applicable to all residency programs in the United States.  The magistrate judge also stated Pouyeh failed to show he was qualified for the internal-medicine and preliminary

---

[2] Pouyeh at times seems to include the ophthalmology residency program in these counts, but since he alleges that the ophthalmology program excludes IMGs altogether, it does not appear that these requirements are relevant to that program.

medicine programs, but we disagree. Pouyeh covered his objective qualifications in substantial detail, and we think his factual allegations are enough to plausibly establish that he applied to and was qualified for these programs, apart from the requirements he challenges in this case. Accordingly, the grounds cited by the magistrate judge do not support dismissal of these claims.

Although we may affirm on any ground supported by the record, it is "the responsibility of the district court in the first instance" to render a reasoned decision on the sufficiency of the allegations in the complaint. *Danley v. Allen*, 480 F.3d 1090, 1092 (11th Cir. 2007); *see Wilkerson*, 270 F.3d at 1322 n.4 ("We do not reach these issues today, preferring that the district court address them in the first instance."). We therefore vacate in part the dismissal of the second amended complaint and remand for further proceedings on Pouyeh's remaining claims.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**