[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13536

_____

Agency No. A090-360-593

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 22, 2011
JOHN LEY
CLERK

J. ASCENCION MALDONADO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 22, 2011)

Before HULL, MARCUS, and BLACK, Circuit Judges.

MARCUS, Circuit Judge:

J. Ascencion[1] Maldonado, a native and citizen of Mexico, petitions for review of the decision of the Board of Immigration Appeals ("BIA") affirming an order that denied Maldonado's motion to terminate removal proceedings based on his prior convictions. In 1994, the government first charged Maldonado with removability under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(2)(A)(ii) and (iii) (1994), based on multiple convictions for child molestation in 1993. An Immigration Judge ("IJ") terminated those proceedings after finding that Maldonado's convictions did not fall within the INA's definition of "aggravated felony." Notably, in 1996, Congress changed the law, codifying an expanded definition of aggravated felony to include "sexual abuse of a minor." The government again charged Maldonado with removability based on his 1993 convictions, this time alleging under the new law that they were qualifying aggravated felonies. The BIA determined that res judicata did not bar the new removal proceedings, because they were based on a ground for removal that did not exist when the prior proceedings were terminated. After thorough review and having had the benefit of oral argument, we agree and accordingly deny Maldonado's petition.

_____

[1] The IJ decisions spell this name "Ascension," as do some other documents in the record, and the name also appears as "Ascencio." We use "Ascencion," as did the BIA and the parties' briefs.

## I.

Maldonado, a native and citizen of Mexico, entered the United States in 1976 and became a lawful permanent resident in 1991. On August 6, 1993, Maldonado was convicted of the felony offenses of child molestation and aggravated child molestation, in violation of section 16-6-4 of the Official Code of Georgia Annotated. The state court sentenced him to five years' probation.

In June 1994, the Immigration and Naturalization Service served Maldonado with an Order to Show Cause charging him with deportability based on these convictions. According to the government, Maldonado was deportable under 8 U.S.C. § 1251(a)(2)(A)(ii) (1994), because he had been "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." The government later added the charge that Maldonado was deportable pursuant to 8 U.S.C. § 1251(a)(2)(A)(iii) (1994), because he had been convicted of an "aggravated felony," as defined in 8 U.S.C. § 1101(a)(43) (1994).

In an order dated July 22, 1994, the IJ terminated the deportation proceedings against Maldonado. The order did not specify the basis for the termination. However, a memorandum from the Immigration Judge's law clerk indicated that the IJ had earlier found that the 1993 convictions did not sustain the

3

deportation charge under 8 U.S.C. § 1251(a)(2)(A)(ii), and it informed the IJ that the 1993 convictions were not "crime[s] of violence" and thus did not qualify as aggravated felonies for 8 U.S.C. §1251(a)(2)(A)(iii) purposes.

In February 2009, the Department of Homeland Security served Maldonado with a Notice to Appear, again charging him with removability based on his 1993 convictions.[2] This time, the government charged that Maldonado was removable under 8 U.S.C. § 1227(a)(2)(A)(iii), because the 1993 convictions were aggravated felonies under 8 U.S.C. § 1101(a)(43)(A), which now defined an "aggravated felony" to include the "sexual abuse of a minor." The government also charged that Maldonado was removable under 8 U.S.C. § 1227(a)(2)(A)(i), because he had been "convicted of a crime involving moral turpitude committed within five years . . . after the date of admission . . . for which a sentence of one year or longer may be imposed." The government noted that Maldonado had gone through removal proceedings in 1994 based on the same convictions, but that the IJ had terminated those proceedings after finding that "the offenses arose out of a single scheme of criminal misconduct and the crimes of child molestation and aggravated child molestation were not crimes of violence" sufficient to sustain an aggravated felony

---

[2] The government alleged in the 2009 Notice to Appear that Maldonado had been convicted of four total counts, whereas the 1994 Order to Show Cause alleged that he had been convicted of two total counts. However, this discrepancy has no relevance to the issues raised in this appeal, and neither party suggests that it does.

charge.

Maldonado moved the IJ to terminate the 2009 removal proceedings claiming that they were barred by the doctrine of res judicata. Maldonado observed that the government had already sought removal based on the same 1993 convictions, and that the IJ in that case terminated the proceedings after finding that the convictions did not justify removal under either of the grounds charged. Because the question of removability on account of his 1993 convictions had already been fully litigated, Maldonado contended that res judicata barred the government from again using the same convictions to seek his removal.

Not surprisingly, the government opposed Maldonado's motion to terminate, explaining that in 1996, Congress amended the INA to add "sexual abuse of a minor" to the definition of "aggravated felony."[3] Because this ground for removal did not exist in 1994 when Maldonado's prior removal proceedings were terminated, the government argued that res judicata would not and did not bar the current proceedings.

In an order dated May 27, 2009, the IJ denied Maldonado's motion. The IJ

---

[3] The crimes involving moral turpitude ground of removability in 8 U.S.C. § 1227(a)(2)(A)(i) was also amended. The former statute required that the alien "either [be] sentenced to confinement or [be] confined . . . for one year or longer." 8 U.S.C. § 1251(a)(2)(A)(i) (1994). Under the current version, however, an alien need only commit a crime of moral turpitude "for which a sentence of one year or longer may be imposed." 8 U.S.C. § 1227(a)(2)(A)(i) (emphasis added).

5

found that res judicata did not bar the current removal proceedings because there was nothing in the record to indicate that the issue of Maldonado's removability was adjudicated on the merits during his 1994 deportation proceedings. Citing Singh v. U.S. Att'y Gen., 561 F.3d 1275 (11th Cir. 2009), the IJ found that res judicata also would not apply because the latest charges -- that the 1993 convictions rendered Maldonado removable under the law as amended in 1996 -- were not in existence at the time of Maldonado's prior proceedings. Substantively, the IJ found that the 1993 convictions related to the sexual abuse of a minor and were for a crime involving moral turpitude, making Maldonado removable under both 8 U.S.C. § 1227(a)(2)(A)(iii) and § 1227(a)(2)(A)(i). The IJ ordered Maldonado removed to Mexico.

Maldonado appealed this ruling to the BIA. On September 10, 2009, the BIA remanded the case back to the IJ for further proceedings. The BIA concluded that the IJ erred in overlooking evidence tending to show that the 1994 proceedings were decided on the merits. The BIA also determined that the IJ failed to address Singh's admonition that claims not in existence at the time of a prior action could be raised later "unless the facts underlying the claim were actually raised in [the prior] action." See id. at 1280 (emphasis added) (internal quotation mark omitted). Accordingly, the BIA remanded to the IJ to make further

6

findings of fact and reassess the applicability of res judicata.

Once again, the IJ denied Maldonado's motion to terminate. The IJ found that all four elements of res judicata appeared to be met, including that the 1994 proceedings were terminated on the merits and that the "current proceedings involve the same cause of action as the first proceedings because both proceedings involve allegations regarding the same underlying conduct." The IJ noted, however, that this case was unique because the government had alleged in the prior proceedings that the 1993 convictions qualified as aggravated felonies under 8 U.S.C. § 1251(a)(2)(A)(iii) (1994) since they were crimes of violence, but now it alleged instead that the convictions qualified as aggravated felonies under 8 U.S.C. § 1227(a)(2)(A)(iii) because they related to the sexual abuse of a minor.[4] Because the present charges did not exist until the INA was amended in 1996, and thus could not have been brought during Maldonado's 1994 deportation proceedings, the IJ concluded that res judicata did not bar the current removal proceedings. As a substantive matter, the IJ again found that the 1993 convictions related to the sexual abuse of a minor and were for a crime involving moral

---

[4] Similarly, the IJ explained that in the prior proceedings the government alleged that Maldonado was removable under 8 U.S.C. § 1251(a)(2)(A)(ii) (1994) because his convictions were for two crimes of moral turpitude not arising out of a single scheme of criminal misconduct, whereas the government now alleged that Maldonado was removable under 8 U.S.C. § 1227(a)(2)(A)(i) because he had been convicted of a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed.

7

turpitude, making Maldonado removable under both 8 U.S.C. § 1227(a)(2)(A)(iii) and § 1227(a)(2)(A)(i), and again he ordered Maldonado removed to Mexico.

Once again, Maldonado appealed to the BIA, arguing that the IJ had misinterpreted the law by conceding that all four elements of res judicata were met, but concluding nonetheless that res judicata did not bar the present removal proceedings. On July 2, 2010, the BIA dismissed Maldonado's appeal. The BIA determined that res judicata was inapplicable because the current removal proceedings did not involve the same cause of action as the prior proceedings. Because the government could not have litigated the sexual abuse of a minor charge in the 1994 proceedings, the BIA found that res judicata did not apply. Accordingly, the BIA concluded that Maldonado was removable based on his conviction for an aggravated felony. The BIA expressly declined to address whether res judicata barred the government's charge that Maldonado was removable under 8 U.S.C. § 1227(a)(2)(A)(i) for a crime involving moral turpitude, except to note that this charge could have been litigated in the prior deportation proceedings.[5]

---

[5] It is not altogether clear why the BIA thought that the § 1227(a)(2)(A)(i) charge could have been litigated in the 1994 deportation proceedings, since the 1994 version of the statute required that the alien be sentenced to or actually serve at least one year of confinement, but Maldonado was sentenced only to probation. See supra note 2. We need not address the issue, however, because we agree with the BIA that the new aggravated felony charge is not barred by res judicata.

Maldonado timely petitioned this Court for review.

On August 2, 2010, while his petition in this Court was pending, Maldonado moved the BIA to reconsider its July 2nd dismissal order, contending that this order was inconsistent with its September 10, 2009, order, which suggested that res judicata would apply if the IJ found on remand that the 1994 proceedings were terminated on the merits. The BIA denied reconsideration, concluding that it lacked authority to grant relief because Maldonado had been removed from the United States on July 8, 2010.

## II.

At the outset, the Attorney General claims that this Court is without jurisdiction to consider Maldonado's claim, because of the jurisdictional limits found in the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (codified in scattered sections of 8 U.S.C.). Specifically, the government says that we lack jurisdiction under 8 U.S.C. § 1252(a)(2)(C), which limits federal court jurisdiction in cases involving certain criminal aliens. The government argues that we have jurisdiction only to determine whether § 1252(a)(2)(C) applies -- that is, to determine whether Maldonado is an alien who is removable based on a disqualifying offense. Because Maldonado was found removable under §

9

1227(a)(2)(A)(iii) based on his conviction for an aggravated felony,[6] the government says that this Court lacks jurisdiction over Maldonado's petition. We remain unpersuaded.

We review our subject matter jurisdiction de novo. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam).

Under 8 U.S.C. § 1252(a)(2)(C), this Court generally lacks jurisdiction to review final orders of removal against aliens who have committed aggravated felonies. Subparagraph (C) states that, "except as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [certain enumerated sections, including 8 U.S.C. § 1227(a)(2)(A)(iii)]." 8 U.S.C. § 1252(a)(2)(C).

The jurisdictional bar found in § 1252(a)(2)(C), however, is expressly subordinate to the provision contained in subparagraph (D). See id. (noting that subparagraph (C) applies "except as provided in subparagraph (D)" (emphasis added)). Subparagraph (D) unambiguously says:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter . . . which limits or eliminates judicial review, shall be construed

_____

[6] Maldonado does not dispute that his 1993 convictions qualify as aggravated felonies under the "sexual abuse of a minor" definition.

10

as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D). As the terms of both provisions make clear, § 1252(a)(2)(D) is an exception to the general rule embodied in § 1252(a)(2)(C). Thus, although Maldonado was undisputedly found removable under § 1227(a)(2)(A)(iii), plainly we retain jurisdiction over any "constitutional claims or questions of law" that he raises.

The sole issue Maldonado has raised is the applicability of res judicata. We have recognized that the application of the doctrine of res judicata is a "pure question[] of law." Norfolk S. Corp. v. Chevron, U.S.A., Inc., 371 F.3d 1285, 1288 (11th Cir. 2004). Even though § 1252(a)(2)(C) would otherwise generally bar jurisdiction, we may consider Maldonado's res judicata challenge on the merits. This conclusion is clearly dictated by § 1252(a)(2)(D).[7]

## III.

We turn then to consider Maldonado's petition on the merits. This Court reviews legal determinations of the BIA de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247 (11th Cir. 2001). "Because res judicata determinations are

---

[7] We add that although Maldonado has now been removed to Mexico, this fact does not render his petition moot. See Moore v. Ashcroft, 251 F.3d 919, 922 (11th Cir. 2001).

11

pure questions of law, we review them <u>de novo</u>." <u>Norfolk S. Corp.</u>, 371 F.3d at 1288.

Res judicata is a judicially crafted doctrine, created to provide finality and conserve resources. <u>Eastman Kodak Co. v. Atlanta Retail, Inc. (In re Atlanta Retail, Inc.)</u>, 456 F.3d 1277, 1284 (11th Cir. 2006) ("Res judicata . . . is a judicially made doctrine with the purpose of both giving finality to parties who have already litigated a claim and promoting judicial economy . . . ." (citing <u>Parklane Hosiery Co. v Shore</u>, 439 U.S. 322, 326 (1979))); <u>see also</u> <u>Shurick v. Boeing Co.</u>, 623 F.3d 1114, 1116 (11th Cir. 2010) (per curiam) ("The doctrine facilitates 'the conclusive resolution of disputes' by reducing 'the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" (quoting <u>Montana v. United States</u>, 440 U.S. 147, 153-54 (1979))). But its application is not strictly mechanical. Rather, we have recognized that our courts have some leeway in deciding whether or not res judicata bars a subsequent suit. <u>See, e.g.</u>, <u>Moch v. E. Baton Rouge Parish Sch. Bd.</u>, 548 F.2d 594, 598 (5th Cir. 1977) ("We are unwilling to hold . . . that [the doctrine of res judicata] constitute[s] an absolute from which we must never stray, even when a mechanical application would result in manifest injustice. Rather, we believe that the

12

occasional adoption of an exception to the finality rule when public policy so demands does not undermine its general effectiveness.").[8]

It is by now hornbook law that the doctrine of res judicata "bars the filing of claims which were raised or could have been raised in an earlier proceeding." Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999). For res judicata to bar a subsequent case, four elements must be present: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." Id. It is uncontested that the first three elements are met in this case.

As for the fourth element, two cases are generally considered to involve the same cause of action if the latter case "arises out of the same nucleus of operative fact, or is based upon the same factual predicate," as the former one. Id. at 1239 (quoting Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1503 (11th Cir. 1990)); see also Singh, 561 F.3d at 1280. "Res judicata acts as a bar 'not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.'" Pleming v.

---

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

13

Universal-Rundle Corp., 142 F.3d 1354, 1356 (11th Cir. 1998) (quoting Manning v. City of Auburn, 953 F.2d 1355, 1358-59 (11th Cir. 1992)).

Thus, the issue boils down to whether Maldonado's 1994 and 2009 removal proceedings involve the same cause of action. We have not yet had occasion to address whether a subsequent charge of removability based on the same prior convictions is a different cause of action for res judicata purposes when an intervening change in law created a new ground of removability that was not available to the government during the prior proceedings.

Maldonado has relied heavily on our earlier decision in Singh. That case, however, does not resolve this issue. In Singh, an alien was convicted of several burglary and theft crimes and sentenced to 364 days' imprisonment, two years' community control, and three years' probation. 561 F.3d at 1277. The government first charged Singh with removability on the ground that his convictions were for crimes involving moral turpitude and a firearm offense, but the IJ terminated those proceedings. Id. at 1277-78. Singh later violated the conditions of his community control, and he was sentenced to 6.6 years in prison. Id. at 1278. The government then charged him with removability as an alien convicted of an aggravated felony, defined as a theft or burglary offense for which a sentence of at least one year was imposed. Id. This Court held that res judicata

14

did not bar the new removal proceedings, because the alien's community control violation and subsequent sentence gave rise to a new cause of action that was not in existence at the time of the prior proceedings. Id. at 1280. Even though both sets of proceedings were based on the same convictions, the aggravated felony charge was unavailable to the government until the alien was actually sentenced to more than a year in prison. Id.

In other words, Singh involved an intervening change in the facts -- the alien's violation of the terms of his community control led to a new sentence. But in this case, there was no change in the facts underlying Maldonado's 1993 convictions, only an intervening change in the law that affected whether those convictions made Maldonado removable. Singh did not deal with changes in the law.

In determining that res judicata did not apply, a panel of this Court in Singh quoted from In re Piper Aircraft Corp., 244 F.3d 1289, 1299 (11th Cir. 2001), for the proposition that "res judicata does not bar a claim that was not in existence at the time of the original action unless the facts underlying the claim were actually raised in that action." Singh, 561 F.3d at 1280. Maldonado relies on the last clause of this statement to argue that his current removal proceedings must be barred by res judicata because the underlying facts -- his 1993 convictions -- were

15

actually raised in his prior proceedings. But the fact that res judicata cannot bar a claim unless the underlying facts were raised in the prior action does not imply that res judicata inevitably must bar any claim whose underlying facts were previously raised.

Piper Aircraft involved a new claim whose underlying facts were not in existence when the first action began and were not raised in that first action. 244 F.3d at 1299. Thus, Piper Aircraft stated its rule in terms of whether the underlying facts "were actually raised" in the prior action. But the opinion's rationale is broader than that. The Court stated that res judicata "bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." Id. at 1296. The Court then explained this Circuit's oft-repeated rule that, "for res judicata purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims actually asserted . . . in the earlier action." Id. at 1298 (quoting Manning, 953 F.2d at 1360). Thus, the key inquiry here is whether the new claim "could have been raised" in the prior proceeding. Id. at 1296; Ragsdale, 193 F.3d at 1238; see also Shurick, 623 F.3d at 1116 ("The doctrine of claim preclusion (or res judicata) bars the parties to an action from relitigating matters that were or could have been litigated in an earlier suit."); Manning, 953 F.2d at 1358 ("Res judicata .

16

. . bars relitigation of matters that were litigated or could have been litigated in an earlier suit."); Richardson v. Ala. State Bd. of Educ., 935 F.2d 1240, 1244 (11th Cir. 1991) ("The doctrine of res judicata . . . forecloses relitigation of matters actually or potentially litigated in an earlier lawsuit."); McKinnon v. Blue Cross & Blue Shield of Ala., 935 F.2d 1187, 1192 (11th Cir. 1991) ("Res judicata is a doctrine of claim preclusion which operates to prevent litigation of matters that were raised or should have been raised in an earlier suit.").

In short, in order to determine whether two cases involve the same cause of action for res judicata purposes, we are obliged to look at the common nucleus of operative fact and ask what legal theories were used or could have been employed in the first proceeding. Ragsdale, 193 F.3d at 1238-39. A new claim is barred by res judicata if it is based on a legal theory that was or could have been used in the prior action. Id. at 1238. But the doctrine does not say that a new claim is barred when it is based on a new theory not otherwise available at the time of the prior proceeding.

It is undeniable that this case involves a new legal theory created only by the intervening statutory change. At the time of Maldonado's first removal proceedings, the government could only allege that he was removable as an aggravated felon under the "crime of violence" definition, because the definition

17

of aggravated felony at that time did not include "sexual abuse of a minor." See 8 U.S.C. § 1101(a)(43) (1994). But the 1996 amendments to the INA expanded the definition of aggravated felony. This statutory change created a wholly new legal theory unavailable to the government during the 1994 proceedings. In subsequent proceedings the government could (as it did), for the first time, allege that Maldonado was an aggravated felon on account of his convictions for sexual abuse of a minor.[9] The new proceedings thus constitute a different cause of action for res judicata purposes.

We add that the doctrine applies even more flexibly in the administrative context than it does when a second court of competent jurisdiction is reviewing the decision of a first court. Our prior case law suggests that this is true. Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 10 (5th Cir. 1974) ("We . . . suggest . . . that the doctrines [of res judicata and collateral estoppel], with respect to administrative proceedings, are not applied with the same rigidity as their judicial counterparts."). And a clear majority of our sister circuits have agreed. See Alvear-Velez v. Mukasey, 540 F.3d 672, 677 (7th Cir. 2008) ("[W]e have applied res judicata much more flexibly in the administrative context.");

_____

[9] The BIA declined to address the applicability of res judicata to the crimes involving moral turpitude charge under 8 U.S.C. § 1227(a)(2)(A)(i); we likewise discuss only the aggravated felony charge under 8 U.S.C. § 1227(a)(2)(A)(iii).

18

Collins v. Pond Creek Mining Co., 468 F.3d 213, 229 n.3 (4th Cir. 2006) ("We have held that 'res judicata of administrative decisions is not encrusted with the rigid finality that characterizes the precept in judicial proceedings.'" (alteration omitted)); Quiñones Candelario v. Postmaster Gen., 906 F.2d 798, 801 (1st Cir. 1990) ("[I]n the context of administrative proceedings, res judicata is not automatically and rigidly applied in the face of contrary public policy."); Facchiano v. U.S. Dep't of Labor, 859 F.2d 1163, 1167 (3d Cir. 1988) ("[A]dministrative preclusion . . . is not as rigidly enforced as preclusion in judicial proceedings."); Artukovic v. INS, 693 F.2d 894, 898 (9th Cir. 1982) ("[I]n the administrative law context, . . . res judicata [is] applied flexibly."); Parker v. Califano, 644 F.2d 1199, 1202 (6th Cir. 1981) ("[A]dministrative res judicata . . . is applied with less rigidity than its judicial counterpart."); United States v. Smith, 482 F.2d 1120, 1123 (8th Cir. 1973) (same); Cartier v. Sec'y of State, 506 F.2d 191, 196 (D.C. Cir. 1974) ("[T]he doctrine of administrative res judicata . . . has not evolved into a rigid system that is to be blindly applied in every context.").

Still another reason counsels against the application of res judicata in this case: it would undercut Congress' clear intention that the expanded definition of aggravated felony should be applied retroactively. The INA was amended pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of

19

1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546. In amending the definition of aggravated felony, the IIRIRA states: "The amendments made by this section shall apply to actions taken on or after the date of the enactment of this Act, regardless of when the conviction occurred . . . ." IIRIRA § 321(c), 110 Stat. at 3009-628. At the end of the new statutory definition of aggravated felony, the IIRIRA also added the statement that "the term applies regardless of whether the conviction was entered before, on, or after the date of enactment." Id. § 321(b), 110 Stat. at 3009-628 (codified at 8 U.S.C. § 1101(a)(43)). As several of our sister circuits have recognized, these two provisions read together amply establish that Congress intended the new definition of aggravated felony to apply to prior convictions. See Dalombo Fontes v. Gonzales, 498 F.3d 1, 3 (1st Cir. 2007) (noting the "clear congressional intent that [the] broadened definition of aggravated felony be applied retroactively"); Flores-Leon v. INS, 272 F.3d 433, 439 (7th Cir. 2001) ("Congress has clearly manifested an intent to apply the amended definition of 'aggravated felony' retroactively."); Aragon-Ayon v. INS, 206 F.3d 847, 851-52 (9th Cir. 2000) (explaining that "Congress has clearly manifested an intent for the amended definition of aggravated felony to apply retroactively," given that the provisions of IIRIRA § 321(b) and (c) "contain a clear and express directive from Congress that the amended definition of

20

aggravated felony should be applied to any and all criminal violations committed by an alien after his or her entry into the United States, whether they were committed before or after the amended definition went into effect").

When Congress changed the definition of aggravated felony, it took the very unusual step of explicitly making the new definition retroactive, by which it meant to cover a large number of aliens who otherwise could not be reached. The unambiguous intent to apply the new definition of aggravated felony retroactively reflects "Congress' policy decision that aliens convicted of sexual abuse of a minor merit removal regardless of when their convictions occurred." Alvear-Velez, 540 F.3d at 680; see also Moch, 548 F.2d at 598; Quiñones Candelario, 906 F.2d at 801 ("[I]n the context of administrative proceedings, res judicata is not automatically and rigidly applied in the face of contrary public policy."); Tipler v. E. I. duPont deNemours & Co., 443 F.2d 125, 128 (6th Cir. 1971) (noting that the rule of res judicata "[is] qualified or rejected when [its] application would contravene an overriding public policy").

Finally, we observe that several of our sister circuits have reached the same conclusion. Thus, for example, the Seventh Circuit considered a nearly identical situation in Alvear-Velez. Based on a 1993 sexual assault conviction, the government first charged that Alvear-Velez was deportable for having been

21

convicted of a crime involving moral turpitude under what was then 8 U.S.C. § 1251(a)(2)(A)(i). 540 F.3d at 675. The IJ terminated the proceedings because he determined that Alvear-Velez had not been sentenced to confinement or actually confined for one year or longer, as required under § 1251(a)(2)(A)(i). Id. In 1999, after the IIRIRA amendments, the government then charged that Alvear-Velez was removable under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1101(a)(43)(A), because his 1993 conviction involved the sexual abuse of a minor. Id. at 675-76.[10]

The Seventh Circuit, applying essentially the same res judicata test that is used in this Circuit,[11] held that the doctrine did not apply. Id. at 681. First, the court observed that res judicata applies "much more flexibly" in the administrative context. Id. at 677. It also noted that "although changes in case law almost never provide a justification for instituting a new action arising from the same dispute

---

[10] The only real factual difference between this case and Alvear-Velez is that Maldonado was originally charged with removability for an aggravated felony, under the crime of violence definition, while Alvear-Velez was charged only for a crime involving moral turpitude. But this difference does not affect the analysis in this case. Both had been charged with removability based on their convictions, successfully had those proceedings terminated, and then faced additional removal proceedings based on the exact same underlying facts, due only to an intervening change in the law. The precise basis for the initial charge is irrelevant, since neither alien was -- and indeed, neither could have been -- initially charged with removability based on a conviction for sexual abuse of a minor.

[11] The Seventh Circuit test does not specifically enumerate that the prior decision must be rendered by a court of competent jurisdiction, but this is not relevant to our concerns in this case. The Seventh Circuit's equivalent to our fourth element is "identity of the cause of action," which they explain is "determined by using the 'operative facts' or 'same transaction' test." See Alvear-Velez, 540 F.3d at 677. This is analogous to our "same cause of action" test.

22

that already has been litigated to a final judgment, statutory changes that occur after the previous litigation has concluded may justify a new action." Id. at 678 (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398-99 (1981)). The Seventh Circuit also determined that "the rule against claim splitting . . . is inapplicable when a statutory change creates a course of action unavailable in the previous action," and that "courts consistently have refused to apply res judicata to preclude a second suit that is based on a claim that could not have been asserted in the first suit." Id. (emphasis added). The court then explained that Congress clearly intended the amended definition of aggravated felony to apply retroactively, and that applying res judicata to bar new removal proceedings based on this new law would thus frustrate Congress' policy decision. Id. at 679-80. Thus, the two proceedings could not be considered to share an "identity of cause of action," even though they were based upon the same convictions. Id. at 679.[12]

_____

[12] The First Circuit, in dicta, has reached a similar conclusion. That case also involved a second set of immigration proceedings based on the amended definition of aggravated felony but relying on the same convictions as the earlier proceedings. Dalombo Fontes, 498 F.3d at 2. The BIA declined to terminate on res judicata grounds. Id. at 2-3. The First Circuit determined that it lacked jurisdiction to review the BIA decision. Id. at 2. But it offered that if it had jurisdiction, it would have denied the petitioner's res judicata claim on the merits. Id. The court explained that "the BIA correctly refused to terminate [petitioner's] removal proceedings in light of the clear congressional intent that its broadened definition of aggravated felony be applied retroactively." Id. at 3. The court also noted that "an exception to res judicata traditionally exists 'where between the time of the first judgment and the second . . . there has been an intervening . . . change in the law creating an altered situation.'" Id. (quoting State Farm Mut. Auto. Ins. Co. v. Duel, 324 U.S. 154, 162 (1945)).

The Second Circuit has also reached a similar conclusion, albeit in a different context. In a

23

In sum, under the facts and circumstances of this case, we will not apply the doctrine of res judicata to bar new removal proceedings in this administrative setting when an intervening change in the law has provided a wholly new legal basis for removal that could not have been raised in the prior proceedings, particularly when Congress clearly intended that new basis to apply retroactively.

Accordingly, we hold that res judicata does not bar the current removal proceedings against Maldonado. Maldonado's petition for review is therefore DENIED.

---

case involving an alien's eligibility for naturalization and a different subsection of the aggravated felony definition, 8 U.S.C. § 1101(a)(43)(M)(i), the Second Circuit determined that res judicata did not apply when the definition of aggravated felony was amended after the termination of the alien's prior deportation proceedings. Ljutica v. Holder, 588 F.3d 119, 127 (2d Cir. 2009). The court explained that "while a previous judgment may preclude litigation of claims that arose prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." Id. (internal quotation marks omitted). Thus, "[b]ecause the Government could not have argued that [the alien] was an aggravated felon based on his 1993 conviction during his deportation proceedings, res judicata would not preclude its taking that position here." Id.