[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10477
_____

D.C. Docket No.  1:15-cv-03148-TWT

CHESHIRE BRIDGE HOLDINGS, LLC,
CHESHIRE VISUALS, LLC,

Plaintiffs-Counter Defendants-Appellants,

versus

CITY OF ATLANTA, GEORGIA, DANITA M. BROWN, Chair,
MARTHA PORTER HALL, Vice Chair, LINDA SESSLER,
KARL BARNES,

Defendants-Counter Plaintiffs-Appellees.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 7, 2019)

Before WILSON, JILL PRYOR and TALLMAN,[*] Circuit Judges.

PER CURIAM:

Cheshire Bridge Holdings, LLC and Cheshire Visuals, LLC (individually and collectively, "Cheshire") appeal the district court's summary judgment order dismissing their federal civil rights complaint against the City of Atlanta and its individual co-defendants (collectively, the "City"). Cheshire alleges, among other things, violations of the First Amendment's Free Speech Clause and a petition for writ of certiorari under Georgia law arising from the City's application of its zoning ordinances to Cheshire's adult-oriented business. The City lodged counterclaims seeking an injunction to prevent operation of an adult club. The district court granted summary judgment to the City based in part on res judicata and lack of redressability. The court also issued a permanent injunction to stop Cheshire from operating its swingers club and adult novelty shop.

The district court's opinion is well-reasoned and learned in addressing this case's myriad complicated issues, but we ultimately reverse its key res judicata and redressability holdings, vacate the injunction, and remand for further consideration.

I

Cheshire owns and operates Tokyo Valentino, an adult toy and video store

---

[*]    Honorable Richard C. Tallman, United States Circuit Judge for the Ninth Circuit, sitting by designation.

2

connected to an adult videoplexx and swingers club, at 1739 Cheshire Bridge Road, Atlanta, Georgia (the "Property").  The business's proximity to a residential area has been the source of conflict between the parties for more than two decades.

In November 1996, Cheshire leased the Property for use as a retail store selling adult novelty items.  The relevant Atlanta zoning ordinances in force at that time were originally adopted in 1987 (the "1987 Code").  On December 2, 1996, Cheshire submitted a business license application to the City for operation of the adult store.

Later that day, the City adopted a new ordinance that changed the 1987 Code, establishing distance requirements for the operation of adult novelty stores (the "1996 Code").  The 1996 Code repealed the relevant 1987 Code provision and provided that the sale of adult novelty items and adult videos was now categorized as an "adult bookstore" and thus constituted an "adult business."  The change rendered operation of Cheshire's desired business activities at the Property illegal because the proposed store would be located too close to a residential neighborhood.

Finally, on December 2, 1996, a City employee denied Cheshire's business license application, even though the 1996 Code was not immediately effective.  On or about January 8, 1997, a higher-level employee at the City officially denied Cheshire's application pursuant to the 1996 Code.

3

On March 7, 1997, Cheshire appealed to the City's Board of Zoning Adjustment, which affirmed the denial. Cheshire then challenged the City's denial of its license in Georgia state superior court (the "State Court Litigation") and prevailed in September 1997. The application was remanded to the City for reconsideration under the 1987 Code.

Cheshire filed a revised application for a business with a "dominant business activity of 'adult video sales, novelties, [and] toys.'" The City—applying the 1987 Code—granted the business license on December 9, 1997.

On December 15, 1997, the City approved a building construction permit for Cheshire at the Property that included "Cleveland style video booths" and stated that the "location is zoned for adult business." However, on December 19, 1997, the City voided that permit and issued another that removes references to video booths and states that the "location is not approved for adult business." Neither permit references any portion of the 1987 or 1996 Codes or clarifies why the December 15 permit was voided. Both permits indicate that they are related to the State Court Litigation by providing the Georgia state court case number at the bottom. Operating video booths showing sexually explicit content as a videoplexx would have been blatantly illegal under any version of the City ordinances and under the restrictive conditions attending to the business license Cheshire had obtained.

4

Cheshire opened Tokyo Valentino for business on February 21, 1998. In a later deposition, Michael Morrison, one of Cheshire's owners, stated that Cheshire operated the videoplexx at the Property "from the beginning."

On December 2, 1998, Cheshire filed suit in federal court against the City alleging various constitutional claims and seeking monetary damages (lost revenue) from the lengthy delay caused by the City's denial of its business license application under the wrong version of the City's code (the "First Federal Lawsuit"). The district court granted summary judgment to the City in 2001.

Cheshire thereafter operated an adult business with a variety of services prohibited by the 1987 and the 1996 Codes at the Property, including the videoplexx. The City took no action against those activities despite the fact that the City sent inspectors to the Property on multiple occasions both before and after the store's opening.[1]

In 2014, Cheshire applied for building permits to renovate the building façade at the Property so that it could begin using an "unoccupied" portion of the building as a "social club." After an investigation, the City withheld approval of those permits and issued a violation correction notice that ordered Cheshire to "cease and desist" operating an adult business at the Property, including the videoplexx.

---

[1]    The record does not specify the exact dates of these visits.

5

In 2015, Cheshire filed this action alleging that the current version of the Code violates its First Amendment rights to freedom of speech and seeking an injunction and a writ of certiorari under Georgia law (the "Second Federal Lawsuit").  The City answered and filed counterclaims for, *inter alia*, declaratory and injunctive relief because Cheshire was illegally operating an "adult business" in violation of the current version of the City's zoning ordinance (the "Current Code").

In all relevant versions of the Code, "adult entertainment" is defined as "adult business," which in turn is defined as "adult bookstore," "adult motion picture theater," "adult mini-motion picture theater," "adult cabaret" and "adult entertainment establishment."  The relevant claim on appeal is that:

> the City's definitions of adult business are unconstitutionally overbroad because any place where a patron is charged to view entertainment "which consists of persons exhibiting or modeling lingerie or similar undergarments" is an adult entertainment establishment; other places which are deemed adult entertainment establishments include any commercial establishment "wherein the entertainment consists of nude or substantially nude persons dancing with or without music or engaged in movements of a sexual nature or movements simulating sexual intercourse . . . ." [2]  Am. Com. at ¶ 32(b)

---

[2]    Paragraph 32 of the Amended Complaint also included the following claims that were dismissed on their merits and have been abandoned on appeal:

> (c) the City's ordinances defining and regulating adult entertainment fail to serve or further a compelling or substantial governmental interest, are not unrelated to the censorship of protected speech and expression, are not narrowly tailored to avoid unlawful infringement

(the "Overbreadth Claim").

After extensive discovery, the City moved for summary judgment on all claims, and Cheshire moved only as to its own constitutional claims. The district court granted the City summary judgment on all claims and entered a permanent injunction that resulted in Cheshire having to cease all of its operations at the Property.

In its analysis, the district court held that Cheshire's claims against two of adult business's sub-definitions, "adult bookstore" and "adult mini-motion picture theater," were barred by res judicata because Cheshire could have brought First Amendment challenges to substantially similar versions of those definitions in the State Court Litigation or the First Federal Lawsuit. The district court further held that, because Cheshire's operations of the video booths would always be subject to code violation enforcement under the "adult mini-motion picture theater" sub-definition, its overbreadth challenge to the "adult entertainment establishment" sub-definition was not redressable. The court also granted summary judgment in favor of the City on Cheshire's petition for writ of certiorari under Georgia law because Cheshire failed to defend that claim. Cheshire timely appealed.

---

of speech or expression [the "Intermediate Scrutiny Claim"]; and

(d) the City's ordinances defining and regulating adult entertainment confer unbridled discretion to the administrative officials to punish or stifle speech [the "Prior Restraint Claim"].

7

II

We review de novo the district court's rulings on the parties' cross motions for summary judgment. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review the evidence and draw all reasonable inferences in the light most favorable to the nonmovant. *Owen*, 629 F.3d at 1270.

III

Cheshire raises five issues on appeal: whether the district court erred when it (1) determined res judicata barred Cheshire's claims that the definitions of "adult bookstore" and "adult mini-motion picture theater" were overbroad or infringed on free speech; (2) held that Cheshire's challenge to the definition of "adult entertainment establishment" was not redressable; (3) applied Georgia law to deny the petition for a writ of certiorari; (4) enjoined Cheshire's entire operation at the Property rather than just the unlawful, expanded use (i.e., the swingers club); and (5) enjoined Cheshire from engaging in allegedly vague actions, including charging patrons for "personal contact" with "devices or equipment."

We reverse the res judicata holding, which, as we will explain, requires vacating the redressability holding and the injunction underlying issues four and five. We affirm judgment on the petition for writ of certiorari because it was

8

waived.

## A

Before we address the res judicata issue, as a threshold matter, we first consider whether the res judicata holding is material given the remaining claims in Cheshire's Amended Complaint. Cheshire only properly raised three First Amendment claims in its Amended Complaint: the Overbreadth Claim, the Intermediate Scrutiny Claim, and the Prior Restraint Claim. The district court granted the City summary judgment on the merits of the Intermediate Scrutiny Claim and the Prior Restraint Claim, and Cheshire has indisputably abandoned those claims on appeal.

The City argues that the Amended Complaint only "raised a single claim of overbreadth, directed at two parts of the definition of 'adult entertainment establishment.'" In other words, the City argues Cheshire did not challenge the definitions of "adult bookstore" or "adult mini-motion picture theater" under the Overbreadth Claim—the only live claim on appeal. If Cheshire's challenges to "adult bookstore" and "adult mini-motion picture theater" were only related to the Intermediate Scrutiny Claim and the Prior Restraint Claim and not the Overbreadth Claim, Cheshire has not properly attacked the res judicata holding because it has abandoned the Intermediate Scrutiny Claim and the Prior Restraint Claim on appeal.

9

Cheshire responds that the Overbreadth Claim is stated against all of the "adult business" definition, including its many sub-definitions such as "adult bookstore" and "adult mini-motion picture theater." Thus, it has properly attacked the res judicata holding by appealing the Overbreadth Claim.

We agree with Cheshire. Reading the Overbreadth Claim as directed only against "adult entertainment establishment," as the City argues, is overly technical and not in conformance with our liberal pleading rules. *See* Fed. R. Civ. P. 8(a); *see also Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1261 (11th Cir. 2015) (holding that a plaintiff's short and plain statement satisfied Rule 8(a)'s liberal pleading standard, citing the Supreme Court's decisions in *Iqbal* and *Twombly*). The Overbreadth Claim sufficiently challenges as overbroad the umbrella "adult business" definition, including its various sub-definitions such as "adult bookstore" and "adult mini-motion picture theater." Indeed, the Overbreadth Claim begins with the plural "the City's definition*s* of adult business are unconstitutionally overbroad because . . . ." Am. Com. at ¶ 32(b) (emphasis added). The City was therefore on notice that the Overbreadth Claim was stated against the whole "adult business" definition.

It is true that the only examples given in the Overbreadth Claim after this first phrase are of an "adult entertainment establishment," but providing one or two examples does not foreclose a challenge against the rest of the sub-definitions of

10

"adult business."  *See Am. Entertainers, L.L.C. v. City of Rocky Mount*, 888 F.3d 707, 714 (4th Cir. 2018) (holding that a complaint's specific example of an overbroad aspect of an ordinance restricting adult or sexual businesses did not limit an overbreadth claim to that specific example; the complaint was aimed at the broader statute, the defendant city was on notice of that, and the court thus analyzed the term as a whole).

The City's half-hearted arguments to the contrary do not persuade us. Indeed, its actions and strategy in the court below—such as failing to file a motion for a more definitive statement under Federal Rule of Civil Procedure 12(e)—and its conduct before us counsel against construing the Overbreadth Claim narrowly and in its favor.[3]  We therefore interpret the Overbreadth Claim as including challenges to "adult bookstore" and "adult mini-motion picture theater."

B

i

Res judicata bars a claim whenever (1) a court with jurisdiction has (2) issued a final judgment on the merits in a case involving (3) the same parties and (4) the same cause of action.  *Shurick v. Boeing Co.*, 623 F.3d 1114, 1116–17 (11th

---

[3]    Additionally, to the extent the Overbreadth Claim could have been more artfully pleaded against the entire "adult business" definition, it could have been cured with a simple amendment to the live complaint.  Thus, at least, judgment on the Overbreadth Claim was inappropriate without first providing an opportunity to replead.

11

Cir. 2010). The first three elements are not in dispute here. The sole issue is whether the Second Federal Lawsuit involves the "same cause of action" as either the State Court Litigation or the First Federal Lawsuit.

"The principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 (11th Cir. 1999); *see also* Restatement (Second) of Judgments § 24, Comment *b* (1982) (underlying this standard "is the need to strike a delicate balance between, on the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the plaintiff in the vindication of a just claim"). "[C]ases are generally considered to involve the same cause of action if the latter case 'arises out of the same nucleus of operative fact, or is based upon the same factual predicate,' as the former one." *Maldonado v. U.S. Att'y Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011) (quoting *Ragsdale*, 193 F.3d at 1238); *see Batchelor-Robjohns v. United States*, 788 F.3d 1280, 1286 (11th Cir. 2015). Res judicata prevents both "the precise legal theory presented in the previous litigation," and "all legal theories and claims arising out of the same operative nucleus of fact." *Maldonado*, 664 F.3d at 1375 (citing *Pleming v. Universal–Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir. 1998)).

We have also held that cases involve the same cause of action if the new litigation involves "matters that were or could have been litigated in an earlier

12

suit." *Shurick*, 623 F.3d at 1116. Still, to determine whether cases involve the same cause of action, courts "must examine the factual issues that must be resolved in the second suit and compare them with the issues explored in the first case." *Pleming*, 142 F.3d at 1356; *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990) (same); *see Manning v. City of Auburn*, 953 F.2d 1355, 1359 (11th Cir. 1992) (holding that res judicata did not apply where appellee's counsel admitted that the first case "did not involve the same factual situation" as the second complaint) (quotations omitted)).

ii

The court below dispensed with the "primary right and duty" test, as well as the "nucleus of operative facts" analysis. Instead, the court stated,

> as long as the factual circumstances in existence then were similar enough that the Plaintiffs could have brought their constitutional claims during that suit, they will be precluded from bringing them now. More specifically, if the Plaintiffs could have challenged the constitutionality of the same definitions of three types of adult businesses back then that they do now—namely, adult bookstores, adult entertainment establishments, and adult mini-motion picture theaters—then their challenges must fail.

The district court proceeded to hold that because Cheshire could have brought challenges in the prior litigation to virtually identical language in the 1987 or 1996 Codes defining "adult bookstore" and "adult mini-motion picture theater," its First Amendment challenges to those definitions in the Current Code were

13

precluded.[4] The district court stated that Cheshire could have brought the "adult bookstore" First Amendment challenge in both the State Court Litigation and the First Federal Lawsuit because the City had used that term, as it was defined in the 1996 Code, to deny Cheshire's business license. The court continued that Cheshire could have challenged the 1996 Code's definition of "adult mini-motion picture theater" in the First Federal Lawsuit because Cheshire "had already begun operating their 'videoplexx,' whether the City knew about it or not, and it was supposed to be regulated by the restrictions on 'adult mini-motion picture theaters.'"[5] The court reasoned that Cheshire could have brought the claim but "chose not to do so," and it would not reward that "strategic silence."

On appeal, Cheshire argues that it could not have brought First Amendment challenges to the definitions of "adult bookstore" or "adult mini-motion picture theaters" in either the State Court Litigation or the First Federal Lawsuit because the cases "did not concern themselves with the constitutional validity of . . . the adult zoning code." Instead, according to Cheshire, the State Court Litigation was about whether the 1987 Code applied to Cheshire's business license application

---

[4] The district court also held that the "adult entertainment establishment" challenges were not precluded because Cheshire did not have "the opportunity" to challenge that definition in the prior cases.

[5] The district court later stated that Cheshire could have challenged the "adult mini-motion picture theater" definition in the State Court Litigation. That was error, and the City does not defend it on appeal; the City only argues that Cheshire could have brought the challenge to "adult mini-motion picture theater" in the First Federal Lawsuit.

14

and whether the 1996 Code had "retroactive effect." And, in turn, the First Federal Lawsuit was to recover damages for the delay in opening Tokyo Valentino the City caused by applying the wrong version of the Code. The court orders in those cases appear to support Cheshire's argument.

The City's initial response is telling:

> [Cheshire]'s opening brief states . . . what [Cheshire] chose to litigate in [the State Court Litigation] and [the First Federal Lawsuit]—and emphasizes that [Cheshire] did not raise constitutional claims in those cases. Of course not: [Cheshire] was illegally operating the adult videoplexx, and Morrison was hiding that fact in his paperwork because he was skimming money from the booths and not paying taxes on it . . . .

Indeed, the City relies heavily on the "strategic silence"/equity argument, rather than actual res judicata law in arguing for an expansive application of the doctrine, and offers no authority supporting that argument beyond the "could have been brought" rule. The City failed to mention the primary right and duty or the nucleus of operative fact analysis in its briefing, but we cannot ignore that part of the analysis.

iii

Whether res judicata applies here is a complex inquiry. We begin our analysis with the principal test of whether the "primary right and duty" in the cases are the same. *See Manning*, 953 F.2d at 1358; *Ragsdale*, 193 F.3d at 1239. "The

test is one of substance, not form." *Manning*, 953 F.2d at 1358; *see Batchelor-Robjohns*, 788 F.3d at 1286. Generalities in defining the primary right and duty are inappropriate; instead courts "'must look to the factual issues to be resolved [in the second cause of action], and compare them with the issues explored in' the first cause of action." *Manning*, 953 F.2d at 1359 (alteration in original) (quoting *S.E.L. Maduro v. M/V Antonio De Gastaneta*, 833 F.2d 1477, 1482 (11th Cir. 1987)) (providing that the argument in two employment discrimination cases that the primary right "not to be discriminated against" and the duty "not to discriminate" was an "oversimplification").

Examining the facts in the record, the primary right asserted in the State Court Litigation, as we see it, was to have the correct version of the Code applied to Cheshire's business license application. In the First Federal Lawsuit, the right Cheshire claimed was to open its business without delay caused by the City's misapplication of the new 1996 Code. The City's primary duty in the State Court Litigation was to properly apply the correct version of the Code. In the First Federal Lawsuit, the City's duty was to not unlawfully obstruct Cheshire from opening its business by applying the wrong version of the Code.

Here, by contrast, the primary right Cheshire asserts is to renovate the Property and freely express itself under the First Amendment by operating a social club as part of its business at the Property. The City's primary duty is to properly

16

apply the Current Code and not unlawfully obstruct Cheshire from operating its business by imposing allegedly overbroad ordinances in violation of the First Amendment. The primary rights and duties among the previous cases and this one therefore appear incongruent. However, the answer is not clear enough in either instance to end the analysis. Thus, as we often do in res judicata cases, we continue to our next test: the nucleus of operative facts test.

The different nuclei of operative facts here also lead to the conclusion that the causes of action are different. *See Pleming*, 142 F.3d at 1356; *Manning*, 953 F.2d at 1359; *see also* Restatement (Second) of Judgments § 24, Comment *b* ("Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes."). The nucleus of operative facts in the State Court Litigation was the events of December 2, 1996, through January 8, 1997, at the City's offices where the City improperly denied Cheshire's application for a business license using the 1996 Code rather than the 1987 Code. For the First Federal Lawsuit, the nucleus of operative facts also began on December 2, 1996 and continued through September 1997, when the state court entered judgment for Cheshire. At the latest, the material facts stretch until December 9, 1997, when the City finally issued Cheshire its business license after considering its renewed application under court

17

order.

Cheshire did not open its store until February 21, 1998. The earlier litigation, at least from the information in the record, never would have touched on Cheshire's operations, including whether it illegally operated the videoplexx "from the beginning."[6] The issuance and reissuance of building permits on December 15 and 19, 1997, were likewise not within the relevant nucleus of operative facts for either prior case.[7]

By contrast, the nucleus of operative facts in this case is the events surrounding the investigation and withholding of Cheshire's application for a building permit and the City's subsequent issuance of a "cease and desist" notice *in 2014*—fully 17 years after the nucleus of operative facts in the prior litigation. *See Manning*, 953 F.2d at 1359. The timing and origin are so different that this new case would not have been conveniently tried with either previous case. *See* Restatement (Second) of Judgments § 24, Comment *b*. Indeed, it would have been

---

[6]    We cannot see how Mr. Morrison's admission can be used against Cheshire to stretch the nucleus of operative facts back to before the store actually opened to the public on February 21, 1998. To the extent there was construction on video booths before that date, Cheshire would not have been violating the "adult business" restrictions in the Code simply by building them—the violation would arise when the store opens, and it begins charging customers to use the booths.

[7]    The opinion in the First Federal Litigation never mentioned the 1997 building permits. Apparently neither Cheshire, in arguing for delay and damages from denial of the business license, nor the City ever raised the issue in that litigation. The 1997 permits were immaterial to the opinion—the court did not need to resolve any factual questions about them. *See Pleming*, 142 F.3d at 1356.

very difficult because the events leading up to this case transpired after the other cases were closed. *See Pleming*, 142 F.3d at 1357 (res judicata does not apply when the "events giving rise to the [second case] arose well after Pleming filed and amended her complaint in the first lawsuit"); *Manning*, 953 F.2d at 1360 (res judicata does not bar claims that are predicated on events that postdate the filing of the initial complaint).

Though the parties in this case eventually delved into Cheshire's operations from the outset because of the City's counterclaims and defenses, the original 1996 and 1997 business license denials are irrelevant to this case except as background. The fact remains that the City never initiated a code enforcement proceeding to challenge Cheshire's operations at the Property until it issued the cease and desist notice in 2014. At that point, the City decided to enforce its zoning ordinances against Cheshire's illegal, non-conforming "adult business" uses. The factual issues that must be resolved in this case are thus very different from the factual issues in the previous cases. *See Pleming*, 142 F.3d at 1356.

The record's reflection of who was deposed in each case and the subject of those depositions further supports our conclusion. *See Manning*, 953 F.2d at 1359 (comparing discovery materials to determine that the nucleus of operative facts were different); *see also* Restatement (Second) of Judgments § 24, Comment *b* (stating that it is "appropriate to ask how far the witnesses or proofs in the second

19

action would tend to overlap the witnesses or proofs relevant to the first").  In the First Federal Litigation, Cheshire deposed those City employees involved in denying the business license in December 1996 and January 1997.

This time around, the parties deposed Morrison, another Cheshire owner, and Tokyo Valentino employees and contractors about the 2014 building permit, cease and desist notice, and current lawsuit, and Cheshire's operations at the Property from the time Tokyo Valentino opened to the day of the depositions.  The parties also deposed City inspectors who visited the Property before and after Tokyo Valentino opened, and current and former City employees involved with processing the building applications in 1997 and 2014.  The information elicited in these depositions show the factual issues to be decided are unrelated in time and subject matter, except that they involve the same parties and zoning compliance at the Property.  *See Herendeen v. Champion Intern. Corp.*, 525 F.2d 130, 133–35 (2d Cir. 1975) (holding that cases do not involve the same cause of action when judgment could be rendered for the plaintiff based on evidence entirely distinct from that which would have supported the first action, and without contradicting any of the matters resolved by the first action).  That is not enough for application of res judicata.

Instead, where, as here, there has been a significant change in facts (actual enforcement of the "adult business" provisions in 2014) that gives rise to a

20

different legal condition (the application of the Current Code to Cheshire's ongoing business), res judicata does not apply. *See Manning*, 953 F.2d at 1359 ("Res judicata is no defense where, between the first and second suits, there has been a[ ] . . . modification of significant facts creating new legal conditions.") (alteration in original) (quoting *Jaffree v. Wallace*, 837 F.2d 1461, 1468 (11th Cir. 1988)); *see also Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2304–09 (2016) (holding that, where "important human values are at stake," such as the First Amendment rights here, "even a slight change of circumstances may afford a sufficient basis for concluding that a second action may be brought" without violating the doctrine of claim preclusion; and that the petitioners' "postenforcement as-applied challenge is not the 'very same claim' as their preenforcement facial challenge" (citing Restatement (Second) of Judgments § 24, Comment *f* )).

Therefore, because the nuclei of operative facts between the State Court Litigation, the First Federal Lawsuit, and this case are substantially different, we hold that res judicata does not preclude Cheshire's Overbreadth Claim from proceeding against either the "adult bookstore" or the "adult mini-motion picture theater" definitions.

Our "could have been brought" rule does not alter the conclusion. It is true that the rule is quite broad and frequently applied. *See, e.g.*, *Griswold v. Cty. of*

21

*Hillsborough*, 598 F.3d 1289, 1294 (11th Cir. 2010) (precluding claims that a party could have raised in prior litigation); *Ragsdale*, 193 F.3d at 1240 (holding that a qui tam plaintiff could have brought a claim in the previous action that he had instead severed in order to bring the second action, and thus the nuclei of operative facts were the same and the second case was precluded).  However, we have never held that the rule operates as a bar in a second case to all theoretical claims one party could have raised against another at the time it filed its first case.  Claims that could have been brought are only precluded if they arise out of the same nucleus of operative facts in the prior case.  *See Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1247 (11th Cir. 2014) (precluding claims "arising out of the same nucleus of operative fact which could have been raised in the prior case" (modifications omitted) (citing *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1561 (11th Cir. 1990))); *see Ragsdale*, 193 F.3d at 1240 (considering whether the claims could have been brought in a previous case to determine whether the nucleus of operative facts were the same, not as an independent basis for res judicata).[8]

The 1997 building permit saga does not alter our conclusion, either.  Even if the record supports the argument that the City applied the 1996 Code's "adult

---

[8]     The City's equitable "strategic silence" arguments cannot otherwise impact our res judicata analysis.  *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981) (providing that consistent application of res judicata "serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case" in holding that there are no equitable exceptions to the doctrine); *Griswold*, 598 F.3d at 1294 (same).

mini-motion picture theater" definition to the building permit to reject the video booths,[9] nothing in the record indicates that the City communicated that application of the law to deny a license to Cheshire before the First Federal Lawsuit was filed, or at any time during that action.  Indeed, the face of the December 19, 1997 building permit does not cite to any particular zoning provision or provide any reason for the apparent changes, and Morrison testified the video booths were removed from the permit because they were supposed to be in the basement and the building permit was only for the main level.[10]

The City argues that writing that the Property was "not approved for adult business" in the December 19 building permit provided notice that it was applying the "adult business" provisions to Cheshire.  But the Property was never approved for "adult business."  Cheshire's adult novelty and video business simply did not meet the definition of "adult business" under the 1987 Code.  Moreover, the City fails to demonstrate that Cheshire knew about the "not approved" change in the

---

[9]     We believe there is, at least, a genuine issue of material fact on this point.  The City does not identify any testimony indicating that the City actually applied the "adult mini-motion picture theater" definition to alter the building permit, and the testimony of the various City officials is inconsistent regarding why the change was made (i.e., whether it was because the drawing did not accurately reflect what was actually there before demolition and construction, because the booths were not in Cheshire's business license application, or because the booths would not have been allowed under the Code if built).

[10]     The City's arguments to its zoning board earlier in this litigation that the 1997 building permits did not include construction in the basement, and its failure to argue that the video booths were removed from the permit because it would have violated the "adult mini-motion picture theater" prohibition in the Code, seem to support Morrison's understanding.

23

bottom corner of the permit.  And the City has cited no authority to support the proposition that a change in a building permit for interior alterations, or stating that a property is not zoned for a particular activity on such a permit, has any legal ramifications or is an actual enforcement action.

Barring a claim where the plaintiff apparently had no knowledge that code provisions had been applied against it, and where there is a genuine issue of material fact on whether the code provision was actually enforced against it at all, would encourage "kitchen-sink" claims against statutory schemes and is a bridge too far.  *See Hellerstedt*, 136 S. Ct. at 2308.

The City was the only party with knowledge that it had applied or intended to apply the 1996 Code to forbid operation of video booths by Cheshire—if it in fact did so.  Armed with that knowledge and facts indicating Cheshire intended to act illegally, the City had every reason to raise the issue to the district court in the First Federal Litigation.  The City's silence further demonstrates that the nucleus of operative facts at issue in the First Federal Lawsuit did not include the December 1997 building permit episode.

Ultimately, the City attempts to find an elephant in a mousehole.  Statements written in tiny font in a corner or in unclear handwriting in a building permit, about which there are conflicting explanations, and that were not discussed in the previous litigation, cannot serve to preclude facially valid constitutional claims.

24

Because we find that the primary rights and duties are different, the nuclei of operative facts are different, and the pre-enforcement claim that theoretically could have been brought is different than the new post-enforcement claim, we hold that no aspect of Cheshire's Overbreadth Claim is precluded under res judicata.  The district court's erroneous holding to the contrary, therefore, is reversed.

C

It follows that we must reverse the district court's determination that the Overbreadth Claim as stated against the "adult entertainment establishment" definition is not redressable.  The district court reasoned that because "adult mini-motion picture theater" would still apply to Cheshire even if it found the "adult entertainment establishment" definition was overbroad, the alleged harm suffered by Cheshire on account of the "adult entertainment establishment" definition could not be remedied.

However, because we have reversed the res judicata holding as to "adult mini-motion picture theater" and there will be a live claim involving that definition on remand, there may be a redressable harm at the end of the litigation from the challenge to "adult entertainment establishment."  *I.L. v. Alabama*, 739 F.3d 1273, 1279 (11th Cir. 2014) (injury redressable where there is "a substantial likelihood that the relief requested will redress the injury claimed" (internal quotation marks omitted) (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S.

25

59, 75 n.20 (1978))).

The City's alternative argument that Cheshire has no injury-in-fact from certain aspects of the "adult entertainment establishment" definition because Cheshire does not currently operate a business that utilizes lingerie modeling or nude dancing is unavailing. The City withheld approval of the building permits and issued the 2014 cease and desist notice because Cheshire was operating an adult business illegally at the Property. Moreover, the City's counterclaims alleged that Cheshire has not maintained a lawful, conforming use. The evidence now in the record appears to support that claim in part because Cheshire indisputably operated, at different times, various types of "adult entertainment establishments" at the Property. It could again, even if it was not at the time of the district court order. There is an actual injury resulting from the definition of "adult entertainment establishment," or at least a credible threat of enforcement under that sub-definition of "adult business." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (providing for standing to challenge a statutory provision where there is a credible threat of enforcement); *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1303–04 (11th Cir. 2017) (en banc).[11]

---

[11]    The City relies on *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006), and other cases to argue that Cheshire has not shown an injury from particular clauses within the subdefinition of "adult entertainment establishment." But Cheshire need not show that it has standing to challenge every clause of every subdefinition in the Code. The City enforced the overarching provision, "adult business," against Cheshire. Cheshire has met its burden by showing it credibly fears losing its right to operate because under several,

Cheshire has suffered an injury, and its Overbreadth Claim is redressable.  It may litigate the Overbreadth Claim against the "adult entertainment establishment" definition.

### D

We affirm the district court's grant of summary judgment on Cheshire's petition for a writ of certiorari under Georgia law because Cheshire has waived all arguments related to that count in the Amended Complaint.  The City moved for summary judgment on the petition for writ of certiorari count, and Cheshire did not respond to that portion of the motion.  We hold that, in failing to respond, Cheshire waived the claim.  *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1156 (11th Cir. 2018) ("As a general matter, issues not raised in the district court and raised for the first time in an appeal will not be considered by this Court."  (quotation omitted)); *see Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 267 F.3d 1303, 1308 n.1 (11th Cir. 2001).  Indeed, the argument in Cheshire's briefing to us citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), *Hanna v. Plumer*, 380 U.S. 460, 465 (1965), and the application of federal procedural law was never mentioned to the trial court.

---

but not all, subdefinitions the City considers it to be a prohibited "adult business."  That is enough under *CAMP*, which holds that courts have "the independent obligation . . . to ensure a case or controversy exists as to each challenged" substantive provision in an ordinance.  *See id.* That obligation does not extend to every clause of each substantive provision challenged.

27

E

Cheshire's Overbreadth Claim against the Code's definition of "adult business" is still live in multiple respects.  Because the district court relied upon the definition of "adult business" and its various sub-definitions to issue the injunction, the injunction cannot lie.  Therefore, we vacate the district court's injunction, which moots the final two issues presented on appeal.

IV

The district court's judgment is REVERSED and VACATED as to the res judicata, redressability, and the injunction-related issues.  The judgment on the petition for a writ of certiorari is AFFIRMED.  The case is REMANDED for further consideration.  Each party shall bear its own costs.